CLAY, J., delivered the opinion of the court, in which COOK, J., joined. DAVID A. NELSON, J. (pp. 557-60), delivered a separate concurring opinion.
OPINION
CLAY, Circuit Judge.
Plaintiff, Sterling China Company (the “Company”), appeals a June 4, 2002, order by the district court granting Defendants, Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24, et al., (collectively, the “Union”) its cross-motion for summary judgment seeking an order enforcing a supplemental arbitration award, dated April 4, 2001, which accords its union workers compensation for work previously performed. Plaintiffs claim, and subsequent motion for summary judgment, asserted that the supplemental arbitration award is null and void, since Defendants were time barred in requesting that the original arbitration award be vacated, modified, corrected or enforced pursuant to the Ohio Revised Code §§ 2711.09 and 2711.13. Because the Court believes the supplemental award to be a clarification not subject to Ohio Rev.Code §§ 2711.09 and 2711.13, we AFFIRM the district court’s decision which enforced the supplemental award and denied the Company’s motion for summary judgment.
BACKGROUND

Procedural History

On June 3, 2001, the Company initiated this case in a complaint for Declaratory Relief and an Application for Order Vacating an Arbitration Award in the Common Pleas Court for Columbiana County, Ohio. *549 In Count I of its action, the Company-seeks a declaration that any action to vacate, modify, correct or confirm an arbitration award issued in December of 1998 is time-barred pursuant to Ohio Rev.Code §§ 2711.09 and 2711.13, thus rendering the subsequent arbitration award issued on April 4, 2001 null and void. In the alternative, in Count II the Company seeks an order pursuant to Ohio Rev.Code § 2711.10 vacating the arbitration award issued on April 4, 2001. On July 26, 2001, the Union removed this case to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1441(a), asserting the action arose under § 301 of the Labor Management Relations Act (“LMRA”), 29 U.S.C. § 185.
On August 16, 2001, the Union filed its answer and counterclaim. The counterclaim, pursuant to Section 301 of LMRA, seeks an order enforcing the 2001 arbitration award. The parties filed cross-motions for summary judgment on December 17, 2001. On June 4, 2002, the district court issued its order denying the Company’s motion for summary judgment and granting the Union’s motion for summary judgment to enforce the supplemental award. On July 3, 2002, the Company filed its notice of appeal.

Substantive Facts

The Company is engaged in the production of fine pottery and chinaware at its facility in Wellsville, Ohio. The Union, headquartered in Media, Pennsylvania, and its local affiliate, located in Wellsville, Ohio, represent the Company’s production and maintenance employees. On February 6, 1993, the Company and the Union entered into a collective bargaining agreement (“CBA”) which contained a grievance procedure providing that disputes arising between the parties under the agreement would be submitted for arbitration. The Company’s “Sterling China/GMP Job Evaluation System,” which is set forth in the Company’s Job Evaluation Manual, was incorporated into Article 22, Section 7 of the CBA. Pursuant to the Agreement: “[t]he Company has the right to combine present or create new job classifications. When such present classifications or new classifications are combined or created, the rate for such classification shall be subject to negotiations between Company and Union using the [ ] Job Evaluation System.” (J.A. at 160-184.)
Under the system, a position is assigned to a Wage Grade commensurate with the degree of difficulty attached to the following job related factors: experience, job knowledge, initiative and ingenuity, physical demand, mental or visual demand, working conditions, and job responsibilities. If the parties cannot agree on a Wage Grade after their evaluation of a job, either party may file a grievance.
In the fall of 1994, the Company began production of a specialty line of glost (glazed) products for the Longaberger Company. Employees who performed work on the Longaberger, specifically the selection or boxing of the specialty items, were paid the Wage Grade 1 base rate of the Glost Utility position, or the Wage Grade 2 base rate of the Glost Selector position.
On or about November 3, 1995 the Union filed a grievance citing the Company’s violation of Article 22, Section 7 of its CBA regarding the applicable wage rate for employees who performed Longabergerware packer’s duties, contending that the correct rate was the Wage Grade 3 base rate of the Glost packer position ($7,585) “plus bonus amount.” An arbitration proceeding commenced in accordance with the grievance procedures of the CBA. Arbitration hearings were conducted on December 5, 1996, November 14, 1997, and April 21, 1998. On December 28, 1998, the arbitrator delivered its opinion and award, sus- *550 taming the Union’s grievance, holding that the affected employees should be paid “the difference between the wage rate they received and the higher base wage rate that had been paid to the Glost Packers” since the fall of 1994. The award indicated that the “job duties” of the “employees who worked on the Longaberger specialty items are ‘reasonably related to the essence of the duties of the Glost Packer.’ ” With respect to the “incentive rates” sought by the Union, however, the arbitrator was persuaded by the Company’s evidence that the affected employees were not entitled to such “incentive rates.” Therefore, the Company was required to pay “any and all employees, who have performed Glost Packer work on the Lon-gaberger specialty ware since the fall of 1994, the difference between the wage rate they received and the higher base wage rate that has been paid to the Glost Packer.”
The Company objected, by letter, on January 12, 1999, because the award provided back pay beyond the date on which the grievance had been filed. The arbitrator responded that according to Article 22, section 7 of the CBA, any change in rates of pay will be retroactive to the “date of the change or new classification,” and based on the change or new classification of the Glost Pack workers on the Longa-berger specialty ware that occurred in the fall of 1994, the remedy is retroactive to the fall of 1994. The arbitrator also stated that the Company’s objection to the retroactive date would call for a change in the award which would be contrary to the principle of functus officio.[1]
Plaintiff then requested an audit from the Union of the affected employees’ hours in order to calculate back pay. In a letter dated, October 1,1999, the Union indicated that 25 employees worked a total of over 24,000 hours in regular and overtime and that they were still auditing the numbers. In a letter dated, October 14, 1999, the Company calculated the pay difference at $.25 per hour and offered to pay that amount for a total of 25,000 hours to account for regular and overtime hours. The Company also quoted the language of the arbitration award that held the affected employees were not entitled to the incentive rates.
The Union wrote back in a letter dated November 4, 1999, stating that the affected employees worked 19,001.625 straight hours and 2,359.5 overtime hours on the Longaberger work and that the Union did not “share [the Company’s] interpretation of the arbitrator’s award.” By letter dated November 15, 1999, the Company offered to pay the difference between the Wage Grade 1 rate and the Wage Grade 3 rate, which was $.26 per hour for straight time and $.39 per hour for overtime, which totaled $5,860.63, according to the Company.
On December 22, 1999, the Union wrote a letter to the arbitrator, carbon copying the Company, which stated: “It is [our] understanding that you are retaining jurisdiction. As of this date, the parties have not reached agreement as to the proper remedy. Therefore, we are requesting available dates for the purpose of getting your opinion regarding the remedy after appropriate arguments have been made.” On December 27, 1999, the Company responded to the Union’s letter, stating that the arbitrator’s award was clear and unambiguous with regard to the issues involving back pay and that there was no need or basis for an additional hearing. In a letter to the arbitrator, the Union stated: “Contrary to the position taken by [the Company’s counsel], an ambiguity does exist concerning the interpretation of the remedial portion of your award,” and that the Union “thinks [] a hearing is neces *551 sary to establish the precise compensation paid to Packers during the back pay period.” Thereafter, the arbitrator convened a supplemental hearing on October 22, 2000.
It was the Company’s position that the arbitrator had no authority to hold an additional hearing, accept additional evidence or issue a supplemental decision or award; therefore, the Company made no appearance except to object to the proceedings in their entirety.
The arbitrator issued a supplemental award on April 4, 2001. The decision summarized the previous award and the position of the parties; then the arbitrator explained his previous intentions:
In order to equal the wage rate equal to Glost Packer’s rate, by necessity the Longaberger employees are required to be paid the same rate as the Glost Packers, rather than a rate which is $3 an hour lower than the Glost Packer. Moreover, I also included in my award that the “grievance is sustained.” By sustaining the grievance, I have sustained the Union’s requested remedy which included the $3 add-on.
(J.A. at 259-262).
In response to the Company’s claim that the Union’s request was precluded by the doctrine of functus officio, the arbitrator explained, “[t]he doctrine of functus officio prohibits reopening the merits of the dispute between the parties.... I am not determining an issue involving the merits which have already been decided.” Id. The arbitrator continued to point out that he retained jurisdiction of the proceedings, “should any disputes arise between the parties with respect to the implementation of this remedy.” Therefore, the arbitrator maintained that the supplemental award clarified the original award and the doctrine of functus officio did not apply.
DISCUSSION
We review de novo the district court’s grant of summary judgment. Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local No. 7, 114 F.3d 596, 599 (6th Cir.1997). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must review the evidence and draw all reasonable inferences in favor of the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Although this court requires a de novo review, the deference that federal courts must give to the settlement of a labor dispute by an arbitrator is substantial. DBM Tech., Inc. v. Local 227, United Food & Commercial Worker Int’l Union, 257 F.3d 651, 656 (6th Cir.2001). The Supreme Court has made clear that courts must give an arbitrator’s decision substantial deference since it is the arbitrator’s construction of the collective bargaining agreement, not the court’s construction, to which the parties have agreed. Wyandot, Inc. v. Local 227, United Food & Commercial Workers Union, 205 F.3d 922, 928-29 (6th Cir.2000) (citing United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 37-38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). Indeed, an arbitrator’s factual errors and even misinterpretations of a collective bargaining agreement are not subject to reconsideration by the court. Id.
*552 I.
A. The Application of the Ohio Revised Code’s Statute of Limitations
The Union removed this case to federal court since the action arose under § 301 of the LMRA. Actions filed under § 301 of the LMRA are subject to the appropriate state statute of limitations, since it contains no federal limitations provision of its own. Aloisi v. Lockheed Martin Energy Systems, 321 F.3d 551, 556 (6th Cir.2003) (citing United Parcel Serv. v. Mitchell, 451 U.S. 56, 60, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981)). The appropriate statute of limitations utilized in an Ohio case seeking to challenge a party moving to vacate, modify, or correct an arbitration award is the Ohio Revised Code (“O.R.C.”) § 2711.13, United Steelworkers of America, Local 4839 v. New Idea Farm Equipment Corp., 917 F.2d 964, 967 (6th Cir.1990), which provides:
[ajfter an award in an arbitration proceeding is made, any party to the arbitration may file a motion in the court of common pleas for an order vacating, modifying, or correcting the award as prescribed in sections 2711.10 and 2711.11 of the Revised Code. Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is delivered to the parties in interest, as prescribed by law for service of notice of motion in an action.
Alternatively, in order to confirm an award once final, parties must move under O.R.C. § 2711.09, Id., which provides:
[ajt any time within one year after an award in an arbitration proceeding is made, any party to the arbitration may apply to the court of common pleas for an order confirming the award. Thereupon, the court shall grant such an order and enter judgment thereon, unless the award is vacated, modified, or corrected as prescribed in sections 2711.10 and 2711.11 of the Revised Code.
Therefore, the proper characterization of the action determines its timeliness. New Idea, 917 F.2d at 967.
The Company asserts that any action taken by the Union, at this time, is barred by the O.R.C. statute of limitation. The Company further argues that the arbitrator was without authority to re-hear this dispute and re-issue another arbitration decision. However, as this court stated in New Idea, the proper characterization of the events in the instant case is necessary to determine timeliness and the proper authority. Id. We will deal with timeliness first.
After the first arbitration award was issued in December of 1998, the parties went back and forth for almost a year disputing the proper application of the issued remedy. The Union understood the arbitration’s conclusion to require that Longaberger workers be equitably compensated to the degree that the existing Glost Packers have been compensated since the fall of 1994, which included more than the $.26 per hour difference as determined by the Job evaluation chart. Apparently, the $3/per hour “add on” that was requested, and clarified in the supplemental arbitration award, was part of the compensation the Union understood to be included in the difference in wage rate.
Conversely, the Company’s understanding was that the difference in wage rate it was ordered to pay the Union employees, merely included the $.26/per hour increase as determined by the Job Evaluation chart, since the arbitrator made a point in the initial arbitration award to state that he was “persuaded by the Company’s evidence with respect to the reasons for not applying the incentive rate to the Packer’s work in the Longaberger ware.” For *553 these reasons, clarification of the arbitration award was necessary to move forward in the proceedings. By way of literal interpretation, clarification of an award is neither controlled by O.R.C. §§ 2711.09 nor 2711.13.[2]
Traditionally, if an arbitration award is ambiguous and in need of clarification, courts are made to remand back to the arbitrator to clarify its meaning and intent. M & C Corp. v. Erwin Behr Gmbh & Co., 326 F.3d 772, 782 (6th Cir.2003) (holding that a “remand is proper both at common law and under the federal law of arbitration contracts, to clarify an ambiguous award or to require the arbitrator to address an issue submitted to him but not resolved by the award” (quoting Green v. Ameritech Corp., 200 F.3d 967, 977 (6th Cir.2000))). Although, the Union’s request for clarification did not come through a request to remand in the federal courts, it is important to recognize that the parties involved needed clarification before any appropriate recourse of federal or state actions became necessary. See New Idea, 917 F.2d at 969 (citing United Steelworkers v. Timken Roller Bearing Co., 324 F.2d 738, 740 (6th Cir.1963) (holding that a “court is not required to enforce an award that is not clear as to its meaning”)).
Therefore, the Union did not violate the three month statute of limitations to vacate, modify or correct an arbitration award under O.C.R. § 2711.13 since the Union did not request such a remedy. Additionally, the Union did not violate the required one-year time frame in which to receive a guaranteed confirmation of an arbitration award under O.C.R. § 2711.09, as that also was not the requested remedy. The Union did request, however, clarification of the award, as its remedial meaning was clearly in dispute. To fully understand the breadth of the arbitrator’s power to clarify, we visit the issue as to whether or not the arbitrator exceeded his power in clarifying and subsequently issuing a supplemental award.
B. The Arbitrator’s Powers Under the Doctrine of Functus Officio
The doctrine of functus officio is defined as “having fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force of authority.” Ameritech, 200 F.3d at 976 (quoting Black’s Law Dictionary 673 (6th ed. 1990)). This doctrine has specifically been applied to the breadth of an arbitrator’s authority whereas in “most eases arbitrators’ appointments continue until they *554 have heard the case, made a final award, and disclosed it to both parties. At this time their task is performed, their duties under the arbitration agreement are discharged, and their arbitral authority is at an end.” Id. (citing III MacNeil, Speidel & Stipanowich § 37.6.1.1, at 37:25). However, the doctrine of functus officio contains several exceptions, such as (1) where the arbitrator can “correct a mistake which is apparent on the face of the award;” (2) where “the award does not adjudicate an issue which has been submitted, then as to the issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination;” and (3) where “the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify.” Industrial Mut. Ass’n, Inc. v. Amalgamated Workers, Local No. 383, 725 F.2d 406, 412 n. 3 (6th Cir.1984) (quoting La Vale Plaza, Inc. v. R.S. Noonan, Inc., 378 F.2d 569, 573 (3d Cir.1967)). This Court has recognized the need for an arbitrator’s “clarification of an ambiguous award when the award fails to address a contingency that later arises or when the award is susceptible to more than one interpretation.” Ameritech, 200 F.3d at 977 (citing Glass, Molders, Pottery, Plastics & Allied Workers Int’l Union, Local 182B v. Excelsior Foundry, Co., 56 F.3d 844, 847 (7th Cir.1995) (“holding that uncertainty in an arbitration award regarding which party would pay for the employee’s rehabilitation justified the arbitrator’s extension of the deadline fixed in the original award, and explaining that this question ‘can fairly be characterized’ as ‘interpretive,’ [thus] ‘allowing [the plaintiff] to crawl through the loophole in the doctrine of functus officio for clarification or completion, as distinct from alteration of the arbitral award.’ ”)).
The Company disputes the Union’s reliance on cases like the Seventh Circuit’s Excelsior Foundry case, and this Court’s Ameritech case, claiming they are distinguishable to the instant action; however, the district court was correct in its view that the arbitrator in this case fell squarely within the authority, followed by this Court, to properly clarify the order at issue. Very much in line with Excelsior, the parties here were confronted with an unexpected contingency after the award was issued: the matter of the exact definition of the “higher base rate” that would be equivalent to the rate received by the Wage 3 Glost Packers’ position since the fall of 1994. The Company can not say that the required remedy was “clearly determined” by the original arbitral award when the parties were clearly in dispute as to the interpretation of the remedy, and there was no numerical determination in the award.
Furthermore, the arbitrator’s retention of jurisdiction further supports its actions as falling squarely within the exceptions of the doctrine of functus of-ficio. The December arbitral award concluded with the arbitrator’s assertion that he “retains jurisdiction should any disputes arise between the parties with respect to the implementation of this remedy.” In correspondence from both parties, the arbitrator’s retention of jurisdiction was acknowledged, therefore leaving this issue unchallenged.
C. The Validity of the April 4, 2001 Supplemental Arbitral Award
Alternatively, even if a clarification was within the arbitrator’s power, the Company argues that the supplemental award exceeded that power and should be vacated, claiming it was issued in violation of O.R.C. § 2711.10(D), which states in pertinent part:
[I]n any of the following cases, the court of common pleas shall make an order *555 vacating the award upon the application of any party to the arbitration if:
(D) The arbitrators exceed their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.
In order to determine whether or not the arbitrator exceeded his powers we must acknowledge the breadth of those powers, and how they were applied. As stated above, the arbitrator has the power under the exception of the doctrine of functus officio to go back and “clarify” an ambiguous or incomplete portion of an award. Behr, 326 F.3d at 782. Now we look to the difference between the December 1998 arbitration award and the April 2001 arbitration award to determine whether or not the latter is in fact a clarification.
As to the original December 1998 award, the Union asserted that the remedy portion was unclear regarding precisely how much each affected Longaberger Packer would receive in compensation based on the arbitrator’s analysis of the two jobs, the Longaberger Packers and the Glost Packers of traditional ware, and its acknowledgment of their equivalency. The ambiguity arises in what seems to be the original award’s denial of any incentive rates above and beyond the documented base rate for a Wage 3 Packer, as set forth in the Job Evaluation Manual. The arbitrator acknowledged that the Union failed to submit evidence regarding the application of the incentive rate to the Glost Packer work on the Longaberger ware, while also acknowledging that the Company submitted persuasive evidence on the reasons the incentive should not be applied. Nevertheless, the incentive rate was never defined in the first award, nor was the “higher base rate” to which the Longaberger Packers were entitled, making such compensation equivalent to the traditional Glost Packers, as expressed by the arbitrator.
In the supplemental award in April 2001, the arbitrator clarified the dispute over what the “higher base rate” encompassed. Since it is undisputed that the original award increased the Longaberger rate to Wage Grade 3, the real question was whether or not that included what the Union assumed to be a $3 per hour “add on” rate. The Company argues that the $3 “add on” rate is the equivalent to the incentive rate to which the original arbitration award did not assent. By applying this rate in the supplemental award, the Company argues the award was altered or changed, thus violating O.C.R. § 2711.10.
Conversely, the Union argues that the $3 “add on” is subject to different criteria than the incentive rate and that the “add on” was necessary to complete what would have been an incomplete award. As clarification, the April 2001 award defines its previous award as to the exact amount entitled to the Longaberger Packers. The arbitrator specifically states that “in the award I refer to the ‘higher base wage rate’ that has been paid to the Glost Packer. I do not refer to the Grade III wage rate of the Glost Packer ... The higher base wage rate includes the $3 add on which has been paid to the Glost Packers for a period of years.” (J.A. at 260). The arbitrator further clarifies his award by stating:
[i]t is important to underscore that I refer to the Longaberger employees warranting a Labor Grade III position and a wage rate equal to the Glost Packers’ rate. In order to equal the wage rate equal to the Glost Packers’ rate, by necessity the Longaberger employees are required to be paid the same rate as the Glost Packers, rather than a rate *556 which is $3/hour lower than the Glost Packer.
(J.A. at 260).
The arbitrator finalized his clarification by stating that he acknowledged his refusal in applying the incentive rate to the award; however, “in making [that] statement, the incentive rate is to be distinguished from the $3 add on which replaced the incentive rate and which has been paid to Glost Packers.” (J.A. at 261). Therefore, given the need for the award’s clarification with respect to the proper compensatory remedy, in addition to the arbitrator’s power to properly go back and clarify any inconsistencies of interpretation, the supplemental award is appropriate and valid under O.C.R. § 2711.10(D). Because the arbitrator’s authority allows for clarification of an award subject to multiple interpretations, the issuance of the supplemental award was well within the arbitrator’s power and was not subject to any limitations found in O.R.C. §§ 2711.09 or 2711.13.
II.
The Company additionally argues that the arbitrator’s 2001 award must be vacated because it fails to draw its essence from the CBA. However, in the instant case, the arbitration award is not a violation of the arbitrator’s express authority as it does draw its essence from the CBA.
This Court’s jurisdiction to review an arbitrator’s decision is predicated on an allegation that the arbitrator reached an erroneous decision. Teamsters Freight Emp. v. Bowling Green Express, Inc., 707 F.2d 254, 256 (6th Cir.1983). We review the arbitrator’s decision only to determine whether the arbitrator was “arguably construing or applying the contract and acting within the scope of his authority.” Misco, 484 U.S. at 38, 108 S.Ct. 364. If the arbitrator’s award “draws its essence from the bargaining agreement,” and is not merely the arbitrator’s “own brand of industrial justice,” the award is legitimate. Beacon, 114 F.3d at 599 (quoting United Steelworkers of Am. v. Enterprise Wheel & Car Co., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). An arbitrator’s award fails to draw its essence from the agreement when:
(1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on “general considerations of fairness and equity” instead of the exact terms of the agreement.
Id. at 600 (quoting Dallas & Mavis Forwarding Co. v. Local Union No. 89, 972 F.2d 129, 134 (6th Cir.1992)).
It is indisputable that the CBA included the term “add on” therein, with regard to wages. (J.A. at 35-36). It is also indisputable that payment of a “base wage” is not the sole means of compensation allowed for in the CBA. By specifically stating the means by which the Company must accurately compensate the Longa-berger Packers (since the intention was to require equivalent compensation), the award itself did not conflict with express terms of the agreement or impose additional requirements not expressly provided for in the agreement. See Wyandot, 205 F.3d at 929 (holding that the arbitration award violated all four factors that dictated its authority, as it violated express timeliness provisions, imposed broad mandatory accommodations for all written arbitration demands, inaccurately found the grievance arbitrable, and ignored the precise terms of the agreement in favor of equity, thus clearly departing from the essence of the agreement and was appropriately vacated).
*557 The Company terms the supplemental award, referencing the $3 add on, as a misinterpretation of its meaning within the CBA. Nevertheless, courts ultimately cannot weigh the merits of the grievance or reverse simply because they disagree with the result of the interpretation of the arbitral award. Beacon, 114 F.3d at 599-600. Given that the intent of Article 22, Section 7 of the CBA was to ensure that all workers would be accurately compensated for changed duties that would in certain circumstance be unknown to the workers, it follows that the supplemental arbitration award fulfills that intent by clarifying the prescribed compensation due to the Longaberger workers. Therefore, whether the arbitrator correctly determined the award or not, the district court’s ruling may not be reversed on review since the supplemental award ultimately drew its essence from the CBA.
CONCLUSION
For the aforementioned reasons, this Court AFFIRMS the district court’s order.

. See section I.B, infra.

. O.R.C. §§ 2711.09 and 2711.13 specifically require parties to file motions with the court of common pleas within the time frame indicated in the language of the statute to guarantee each provision’s respective relief. There is no indication in the statutory language that these time frames affect a party’s ability to reconcile clarifications of an award with its arbitrator. Nevertheless, the initial inquiry by the Union to the arbitrator requesting clarification was within one year of the arbitration award, thus not precluding mandatory confirmation upon a possible motion, pursuant to O.R.C. § 2711.09, by the Union if they so chose.
Additionally, the Company argues that a request for clarification does not effectively "toll” the statute of limitations for the filing of a subsequent motion to vacate, modify, correct or confirm, citing Galion v. Am. Fed’n of State, Cty. & Mun. Emp. Ohio Council 8, AFL-CIO, Local 2243, et al., 71 Ohio St.3d 620, 646 N.E.2d 813, 815-16 (1999). This matter does not involve an issue of “tolling,” nor did the Union attempt to modify, vacate, correct or confirm the August 1998 award, by way of a motion under O.C.R. §§ 2711.09 or 2711.13. Furthermore, Gallon is distinguishable since the arbitrator there did not retain jurisdiction to clarify ambiguities, whereas in the instant action, the arbitrator did retain such authority. The Court need not analyze the parameters of a situation where the arbitrator does retain jurisdiction under the same factual scenario as Galion, since the instant case differs in both respects.