SADLER, J.
{¶ 1} Defendant-appellant, Ohio Civil Service Employees Association, Local 11 ("OCSEA"), appeals from a judgment of the Franklin County Court of Common Pleas vacating an arbitration award in favor of plaintiffs-appellees, Office of Collective Bargaining ("OCB") and Ohio Department of Developmental Disabilities ("DODD"). For the reasons that follow, we affirm.
I. FACTS AND PROCEDURAL HISTORY
{¶ 2} In 2013, the Youngstown Developmental Center, a facility operated by DODD, employed Danielle Lazaro as a therapeutic program worker. In her position, Lazaro provided direct care to the developmentally disabled clients at the facility. One such client had become known for "going through the refrigerator" and eating so quickly that she risked choking. (May 28, 2015 Arbitrator's Opinion & Award at 5.) On July 30, 2013, a hidden Ohio State Highway Patrol camera captured Lazaro either slapping the hand of this particular client or forcibly knocking something out of the client's hand in an aggressive manner. Lazaro also reportedly observed another worker kick the same client and then failed to report the incident to her supervisor.
{¶ 3} After viewing the video footage, DODD removed Lazaro from her state employment for two separate violations of DODD's Standards of Conduct: (1) abuse of a client; and (2) failure to report a co-worker's abuse of a client. Lazaro grieved her removal pursuant to the Collective Bargaining Agreement ("CBA") between DODD and OCSEA, culminating in arbitration.
{¶ 4} The arbitrator held an evidentiary hearing in the matter on March 20, 2015. As a result of the hearing, the arbitrator issued a decision on May 28, 2015, which she forwarded to the parties via email at 9:53 p.m. In the decision, the arbitrator noted that DODD's Standards of Conduct defines physical abuse as follows:
Any physical motion or action (e.g., hitting, slapping, punching, kicking, or pinching) by which potential or actual bodily harm or trauma may occur. The use of physical force that can be reasonably expected to result or potentially result in physical harm or serious harm, including psychological harm or trauma and sexual abuse. Such force includes, but is not limited to, hitting, slapping, pushing, or throwing objects at an individual with developmental disabilities.
(May 28, 2015 Arbitrator's Opinion & Award at 21-22.)
*485 {¶ 5} The arbitrator reviewed the videotape and compared what she observed to the definition of "physical abuse" set forth in the Standards of Conduct and reached the following conclusion:
So the question for the Arbitrator is whether the Grievant's conduct falls within DODD's definition of abuse. Regrettably, it appears to the Arbitrator that some of the Grievant's conduct toward the client in the kitchen on July 30, 2013 falls within DODD's definition of abuse. Regrettably, because the Grievant appears to care about her work with clients, and as set out in her performance evaluations, generally does that work well.
In particular, the Arbitrator finds the video at 21:35:41-42 shows the Grievant slapping the client's hand. It is possible the Grievant was only knocking food items out of the client's hand, rather than directly slapping the client's hand. Even if that were the case, however, the video shows the Grievant doing so in a very aggressive manner. Such slapping or "knocking" comes within DODD's definition of physical abuse, as set out above.
(Emphasis added.) (May 28, 2015 Arbitrator's Opinion & Award at 23.)
{¶ 6} In reaching this conclusion, the arbitrator expressly rejected OCSEA's argument that the definition of "[a]buse" found in R.C. 2903.33(B) should be applied to the Lazaro case. R.C. 2903.33(B) defines abuse for purposes of the offenses of "[p]atient abuse" under R.C. 2903.34 and "[p]atient endangerment" under R.C. 2903.341 as "knowingly causing physical harm or recklessly causing serious physical harm to a person by physical contact with the person or by the inappropriate use of a physical or chemical restraint, medication, or isolation on the person." The arbitrator found that Lazaro had not violated DODD's Standards of Conduct by failing to report her co-worker's abuse of the client because the videotape did not conclusively show that she witnessed her co-worker's abuse of the client.
{¶ 7} Having determined that Lazaro had committed the violation for which DODD had removed her from her position, abuse of a client, the arbitrator considered whether the violation warranted Lazaro's removal:
From the video, it is apparent that the Grievant's co-worker engaged in serious, multiple acts of abuse toward the client-hitting, kicking, and grabbing, In contrast, the Grievant's only actual act of abuse was slapping the client's hand once, at the beginning of the kitchen incident when the Grievant first discovered the client had taken food from the refrigerator. After that slap, the Grievant conducted herself in a more measured manner, though she did not consistently use best practices.
Based on the entire record, as well as the Parties' contentions, the Arbitrator finds the Grievant's single slap merits a serious suspension, but not termination.
(May 28, 2015 Arbitrator's Opinion & Award at 26-27.)
{¶ 8} The arbitrator concluded that DODD did not have just cause, pursuant to the CBA mandated progressive discipline policy, to remove Lazaro from her employment for "a first offense of abuse." (May 28, 2015 Arbitrator's Opinion & Award at 27.) The arbitrator ordered DODD to reinstate Lazaro to her former position "with full back pay, seniority, and benefits, less 30 working days pay, seniority, and benefits." (May 28, 2015 Arbitrator's Opinion & Award at 27.) The arbitrator modified the discipline to "a 30-day suspension for a first offense of abuse." (May 28, 2015 Arbitrator's Opinion & Award at 27.)
*486 {¶ 9} Following the release of the arbitrator's opinion and award on May 28, 2015, the arbitrator sent an email to the parties at 9:23 a.m. on May 29, 2015, informing them that she had corrected a "typo on page 13 and some dropped sentences on page 14." (May 29, 2015 Email.) The arbitrator attached a modified opinion and award to the email. The modifications did not affect any substantive changes to the opinion or the award.
{¶ 10} On May 30, 2015, the arbitrator issued yet another opinion and award in the case. On this occasion, the award remained the same but the findings and conclusions changed. In her third opinion and award, the arbitrator found that Lazaro's conduct in slapping the client's hand or knocking food out of the client's hand in a "very aggressive manner" did not constitute client abuse as that term is used in the CBA because Lazaro's conduct did not cause "potential or actual bodily harm or trauma" or "potential [ ]physical harm or serious harm." (May 30, 2015 Arbitrator's Opinion & Award at 23, 24.) The arbitrator concluded that Lazaro was guilty of violations of rules E-3 and E-5 of DODD's Standards of Conduct. There is no dispute that such violations occur when a client is neglected but not abused. Despite the new findings and conclusions, the "award" section of the opinion continued to state that Lazaro's "discipline record will reflect a 30-day suspension for a first offense of abuse." (May 30, 2015 Arbitrator's Opinion & Award at 27.)
{¶ 11} Later that same day, the arbitrator issued a fourth opinion and award which contains the same reasoning and award as the third opinion with one notable exception. In the "award" section of the fourth opinion and award, the arbitrator states that Lazaro's "discipline record will reflect a 30-day suspension for a first offense of Rules E-3 and E-5." (May 30, 2015 Arbitrator's Opinion & Award at 27.)
{¶ 12} The arbitrator issued her fifth and final opinion and award on May 31, 2015. This opinion and award contains additional discussion of a 1987 opinion and award issued by another arbitrator in a case involving a previous CBA executed by the parties. In the email accompanying this fifth opinion and award, the arbitrator states "I realized I needed to get to the bottom of the criminal v. agency standard of the definition of 'abuse.' " (Ex. attached to Application & Mot. to Vacate Arbitration Award.) In her fifth opinion and award, the arbitrator expressly adopted the definition of "abuse" found in R.C. 2903.33(B), the same definition she had previously rejected in her original opinion and award. Applying this definition, the arbitrator again found that Lazaro's conduct did not meet the definition of client abuse as the term is used in the CBA.
{¶ 13} On June 10, 2015, OCB and DODD filed an application in the Franklin County Court of Common Pleas, pursuant to R.C. 2711.11 and 2711.13, seeking an order vacating the arbitrator's award. On June 29, 2015, OCSEA filed an application, pursuant to R.C. 2711.09, seeking an order confirming the arbitrator's award.
{¶ 14} On May 24, 2018, the trial court issued a decision and entry granting the application to vacate the arbitrator's award and denying OCSEA's application to confirm the award. Therein, the trial court first determined the arbitrator did not have authority to make substantive changes to the original opinion and award. Accordingly, the trial court confined its review to the arbitrator's first opinion and award. The trial court next determined that the arbitrator exceeded her authority under the CBA by concluding that DODD did not have just cause to remove Lazaro *487 from her state employment after finding that Lazaro had committed client abuse.
{¶ 15} OCSEA timely appealed to this court from the judgment of the trial court.
II. ASSIGNMENT OF ERROR
{¶ 16} OCSEA assigns the following as trial court error:
The trial court erred by vacating the arbitrator's award under O.R.C. § 2711.10(D).
III. STANDARD OF REVIEW
{¶ 17} In Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities , 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.E.3d 804, the Supreme Court of Ohio settled the conflict between the appellate districts as to the appropriate standard of review in an appeal from a trial court decision on an arbitration award. The court rejected an abuse of discretion standard and held as follows:
When reviewing a decision of a common pleas court confirming, modifying, vacating, or correcting an arbitration award, an appellate court should accept findings of fact that are not clearly erroneous but decide questions of law de novo.
Id. at syllabus.
{¶ 18} " 'The question whether an arbitrator has exceeded his authority is a question of law.' " Id. at ¶ 25, quoting Green v. Ameritech Corp. , 200 F.3d 967, 974 (6th Cir.2000). In reviewing questions of law, this court gives no deference to the trial court's decision but decides the issue de novo. Portage Cty. Bd. of Dev. Disabilities at syllabus.
IV. LEGAL ANALYSIS
A. OCESA's Assignment of Error
{¶ 19} OCSEA first contends the trial court erred when it determined the arbitrator exceeded her powers under the CBA by modifying Lazaro's discipline after making a finding that Lazaro committed client abuse. We disagree.
{¶ 20} In Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME, AFL-CIO , 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), appellant union, on behalf of an employee, filed a grievance following the employee's removal. The employee, who was employed in a facility that housed developmentally disabled clients, was terminated from her employment because she abused a client. The chief of labor relations denied the grievance. On the union's appeal, the matter went to arbitration. The arbitrator conducted a bifurcated hearing. In the first phase, he defined abuse. In the second phase, he concluded the employee had committed an abuse of the patient. The arbitrator reinstated the employee, citing improper notice and a penalty disproportionate to those in similar cases. Appellee Office of Collective Bargaining filed an application in the common pleas court seeking to vacate the award. The trial court vacated the award and the union appealed. This court affirmed the trial court's decision to vacate the arbitrator's award. The Supreme Court granted the union leave to appeal.
{¶ 21} In affirming this court, the Supreme Court determined that "an arbitrator departs from the essence of a collective bargaining agreement when: '(1) an award conflicts with express terms of the collective bargaining agreement, * * * [or] (3) an award is without rational support or cannot be rationally derived from the terms of the agreement. * * *' (Citations omitted.)" Id. at 183, 572 N.E.2d 71, citing Cement Divs., Natl. Gypsum Co. v. United Steelworkers of Am. , 793 F.2d 759, 766 (6th Cir.1986) ;
*488 Dobbs, Inc. v. Local No. 614, Internatl. Bhd. of Teamsters , 813 F.2d 85, 86 (6th Cir.1987).[1]
{¶ 22} The Supreme Court examined the following relevant provisions of the CBA defining the arbitrator's powers:
"* * * Only disputes involving the interpretation, application or alleged violation of a provision of the Agreement shall be subject to arbitration. The arbitrator shall have no power to add to, subtract from or modify any of the terms of this Agreement, nor shall he/she impose on either party a limitation or obligation not specifically required by the expressed language of this Agreement. " (Emphasis added.)
* * *
"* * * In cases involving termination, if the arbitrator finds that there has been an abuse of a patient or another in the care of the State of Ohio, the arbitrator does not have authority to modify the termination of an employee committing such abuse. " (Emphasis added.)
Ohio Office of Collective Bargaining at 182, 572 N.E.2d 71, quoting CBA Section 25.03.
{¶ 23} The court concluded the arbitrator's award conflicted with the express terms of the CBA by imposing additional requirements for termination not expressly provided in the agreement and not rationally derived from the terms of the agreement. Ohio Office of Collective Bargaining at 183, 572 N.E.2d 71. The Supreme Court concluded the arbitrator essentially created a contract of his own because his interpretation of the clause governing termination for abuse failed to draw its essence from the agreement. Id.
{¶ 24} The facts of this case are essentially the same as those addressed by the Supreme Court in Ohio Office of Collective Bargaining , and the relevant provisions of the CBA in this case are identical to those examined by the Supreme Court in Ohio Office of Collective Bargaining. The parties' CBA provides, in relevant part, as follows:
Disciplinary action shall not be imposed upon an employee except for just cause. The Employer has the burden of proof to establish just cause for any disciplinary action. In cases involving termination, if the arbitrator finds that there has been an abuse of a patient or another in the care or custody of the State of Ohio, the arbitrator does not have authority to modify the termination of an employee committing such abuse.
* * *
* * * The arbitrator shall have no power to add to, subtract from or modify any of the terms of this Agreement, nor shall he/she impose on either party a limitation or obligation not specifically required by the expressed language of this Agreement.
(Emphasis added.) (CBA Section 24.01 at 94, CBA Section 25.03 at 105.)
{¶ 25} Here, the arbitrator, in her original opinion and award, expressly found that "some of the Grievant's conduct toward the client in the kitchen on July 30, 2013 falls within DODD's definition of abuse" and that "slapping or 'knocking' comes within DODD's definition of physical abuse." (May 28, 2015 Arbitrator's Opinion & Award at 23.) As noted above, the CBA mandates that "[i]n cases involving termination, if the arbitrator finds that *489 there has been an abuse of a patient or another in the care or custody of the State of Ohio, the arbitrator does not have authority to modify the termination of an employee committing such abuse." (CBA Section 24.01 at 94.) By modifying Lazaro's discipline after making a finding that Lazaro had committed physical abuse of a client, the arbitrator imposed additional requirements for termination not expressly provided in the agreement and not rationally derived from the terms of the agreement. As set forth in the CBA, the arbitrator has "no power to add to, subtract from or modify any of the terms of this [CBA], nor * * * impose on either party a limitation or obligation not specifically required by the expressed language of this [CBA]." (CBA Section 25.03 at 105.)
{¶ 26} Having made a finding that Lazaro committed client physical abuse and because the discipline imposed by DODD was termination of Lazaro's state employment, section 24.01 of the CBA prohibited the arbitrator from employing the progressive discipline policy as a basis to modify discipline. As was the case in Ohio Office of Collective Bargaining , the arbitrator essentially created a contract of her own by failing to apply the clause governing termination in cases of client abuse and, instead, applied the progressive discipline policy.
{¶ 27} For the foregoing reasons, we agree with the trial court that the arbitrator's original opinion and award fails to draw its essence from the CBA and, in fact, directly conflicts with mandatory provision prohibiting an arbitrator from modifying the termination of an employee committing client abuse. The arbitrator did not have the authority to disregard a mandatory provision of the CBA in order to impose her own form of discipline.
{¶ 28} OCSEA next contends that the trial court erred when it confined its review to the arbitrator's original opinion and award. OCSEA argues that the trial court should have conducted its review of the fifth and final opinion and award. We agree with the trial court.
{¶ 29} "The doctrine of functus officio is defined as ' "having fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force of authority." ' " (Emphasis sic.) Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24 , 357 F.3d 546, 553 (6th Cir.2004), quoting Green , 200 F.3d at 976, quoting Black's Law Dictionary 673 (6th Ed.1990). "This doctrine has specifically been applied to the breadth of an arbitrator's authority whereas in 'most cases arbitrators' appointments continue until they have heard the case, made a final award, and disclosed it to both parties. At this time their task is performed, their duties under the arbitration agreement are discharged, and their arbitral authority is at an end.' " Sterling China at 553-54, citing Green at 976, quoting III MacNeil, Speidel & Stipanowich , Section 37.6.1.1, at 37:25. "The policy which lies behind this is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion." McClatchy Newspapers v. Cent. Valley Typographical Union No. 46 , 686 F.2d 731, 734 (9th Cir.1982).
{¶ 30} In Miller v. Gunckle , 96 Ohio St.3d 359, 2002-Ohio-4932, 775 N.E.2d 475, the Supreme Court adopted a similar approach to reviewing an arbitrator's award under R.C. Chapter 2711. In Miller , one of the questions for the court was whether a panel of arbitrators had authority to reconsider their first award. The Miller court answered: "It is clear that it did not."
*490 Id. at ¶ 22. In so holding, the Miller court stated:
R.C. Chapter 2711 does not confer authority on an arbitration panel to reconsider its awards. Instead, R.C. Chapter 2711 confers jurisdiction only on the trial court, pursuant to R.C. 2711.10 and 2711.11, to vacate, modify or correct arbitration awards. Furthermore, "when the submitted issues are decided, the arbitrators' powers expire. Thus, a second award on a single, circumscribed submission is a nullity." Lockhart v. Am. Res. Ins. Co. (1981), 2 Ohio App. 3d 99, 102, 2 Ohio B. Rep. 112, 440 N.E.2d 1210, citing Bayne v. Morris (1863), 68 U.S. 97, 99 [1 Wall. 97], 17 L.Ed. 495. Lockhart also relied on Citizens Bldg. of W. Palm Beach, Inc. v. W. Union Tel. Co. (C.A.5, 1941), 120 F.2d 982, 984, which held, "Arbitrators are appointees with but a single duty and * * * performance of that duty terminates their authority. When an arbitral board renders a final award, its powers and duties under the submission are terminated. Its authority is not a continuing one, and, after its final decision is announced, it is powerless to modify or revoke it or to make a new award upon the same issues."
Id. at ¶ 23.
{¶ 31} The doctrine functus officio is not applicable, however, where the arbitrator does not attempt to change his opinion in a substantive way. Fred Meyer, Inc. v. Teamsters Local 206 , 463 F.Supp.2d 1186, 1193 (D.Or.2006). Accordingly, there are several exceptions to the doctrine, such as "(1) where the arbitrator can 'correct a mistake which is apparent on the face of [the] award'; (2) where 'the award does not adjudicate an issue which has been submitted, then as to [the] issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination'; and (3) where 'the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify.' " Sterling China at 554, citing Indus. Mut. Assn., Inc. v. Amalgamated Workers, Local No. 383 , 725 F.2d 406, 412, fn. 3 (6th Cir.1984), quoting La Vale Plaza, Inc. v. R.S. Noonan, Inc. , 378 F.2d 569, 573 (3d Cir.1967). See also Green at 977, citing Glass, Molders, Pottery, Plastics & Allied Workers Internatl. Union, Local 182B v. Excelsior Foundry Co. , 56 F.3d 844, 847 (7th Cir.1995).
{¶ 32} None of the recognized exceptions apply in this case. Our review of the arbitrator's original opinion and award shows that the arbitrator exhausted her function by fully adjudicating all submitted issues and by making a final award. The arbitrator's original opinion and award makes all required factual findings, sets forth the applicable law, reaches the necessary legal conclusions, and makes an award that finally determines all pending matters. In our view, the arbitrator's third, fourth, and fifth iterations of the opinion and award affected changes to the original opinion and award that can only be characterized as substantive in nature both factually and legally. This is the very circumstance that the doctrine of functus officio and Miller intended to prevent.
{¶ 33} We disagree with OCSEA's contention that each of the arbitrator's successive opinions and awards merely corrected mistakes in the prior opinion and award. Though it is true that the arbitrator's award remained the same in each of the opinions and awards issued after the original, the arbitrator's fifth opinion and award reached a different finding with respect to the critical factual issue in the case, employed a different legal analysis, and, in the process, redefined essential terms in the CBA.
*491 {¶ 34} As set forth above, the dispositive factual issue in this case was whether Lazaro's conduct as evidenced in the videotape constituted physical abuse of a client. Because the term "physical abuse" is not defined in the CBA, the arbitrator's original opinion and award adopted the definition of physical abuse used in DODD's Standards of Conduct. There is no dispute the definition of physical abuse in DODD's Standards of Conduct is derived from Ohio Adm.Code 5123:2-17-02(C)(15)(a)(vii), which defines "[p]hysical abuse" as "the use of physical force that can reasonably be expected to result in physical harm or serious physical harm as those terms are defined in section 2901.01 of the Revised Code. Such force may include, but is not limited to, hitting, slapping , pushing, or throwing objects at an individual." (Emphasis added.) Under R.C. 2901.01(A)(3), " '[p]hysical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." We note that Ohio Adm.Code 5123:2-17-02 is the specific section of the Ohio Administrative Code that applies to complaints involving DODD.
{¶ 35} In order to commit physical abuse as that term is defined in DODD's Standards of Conduct and Ohio Adm.Code 5123:2-17-02(C)(15)(a)(vii), actual physical harm to the client is not required, just the use of physical force that can "reasonably be expected to result in physical harm." We cannot say the definition of physical abuse found in the provisions of the Ohio Administrative Code pertaining specifically to complaints against DODD fails to draw its essence from the CBA. In our view, the arbitrator's decision to employ this definition of physical abuse was a reasonable choice under the circumstances. Employing this definition in her first opinion and award, the arbitrator found that Lazaro's conduct in slapping the client's hand or knocking food out of the client's hand in a "very aggressive manner" met the definition of client abuse. (May 28, 2015 Arbitrator's Opinion & Award at 23.)
{¶ 36} In her fifth opinion and award, the arbitrator expressly adopted the definition of "[a]buse" found in R.C. 2903.33(B), the same definition she had previously rejected in her original opinion and award. R.C. 2903.33(B) defines abuse for purposes of the offenses of "[p]atient abuse" under R.C. 2903.34 and "[p]atient endangerment" under R.C. 2903.341 as "knowingly causing physical harm or recklessly causing serious physical harm to a person by physical contact with the person or by the inappropriate use of a physical or chemical restraint, medication, or isolation on the person." Applying this definition, the arbitrator found Lazaro's conduct did not meet the definition of physical abuse as the term is used in the CBA. The changes to the original opinion and award made by the arbitrator were of critical importance to the case, given the provision of the CBA prohibiting the arbitrator from modifying any disciplinary action in the form of removal where the employee is found to have committed abuse of a client. It is not reasonable to conclude that the arbitrator, in doing so, merely corrected mistakes apparent on the face of the report.
{¶ 37} Similarly, OCSEA's contention that the arbitrator's original opinion contains an ambiguity with respect to the finding of physical abuse is without merit. Though we have concluded the arbitrator's finding that Lazaro committed physical abuse of a client precluded the arbitrator from modifying Lazaro's discipline under the terms of the CBA, our review of the original opinion and award does not reveal any ambiguity with respect to the finding of abuse. The arbitrator applied the definition of abuse in the DODD's Standards of Conduct and *492 Ohio Adm.Code 5123:2-17-02(C)(15)(a)(vii) to the conduct she observed on the videotape and found Lazaro's conduct amounted to physical abuse of a client. The fact the arbitrator may have failed to recognize that the CBA did not authorize her to modify the discipline on a finding of physical abuse does not mean the finding itself was unclear or that the opinion and award was ambiguous. To the contrary, the arbitrator's original opinion and award was both clear and unambiguous, but the award itself was irreconcilable with the CBA.
{¶ 38} For the foregoing reasons and on our de novo review, we hold the trial court did not err when it vacated the arbitrator's award on finding that the arbitrator exceeded her authority under the CBA by modifying Lazaro's discipline. Accordingly, OCESA's sole assignment of error is overruled.
V. CONCLUSION
{¶ 39} Having overruled OCESA's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
LUPER SCHUSTER, J., concurs
TYACK, J., dissents.

In Mich. Family Res., Inc. v. SEIU Local 517M , 475 F.3d 746, 753 (6th Cir. 2007), the Sixth Circuit abandoned the four-part test in Cement Divisions in favor of a stricter standard for reviewing an arbitrator's award. However, the Supreme Court of Ohio still relies on Cement Divisions as the appropriate standard. Cedar Fair, L.P. v. Falfas , 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 7.