**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**S.E. NICHOLS OF OHIO, INC.,
Respondent.**

**No. 81–1756.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 22, 1983.

Decided April 15, 1983.

Elliott Moore, Deputy Associate Gen. Counsel (argued), Frances O'Connell, N.L.R.B., Washington, D.C., for petitioner.

Leonard W. Wagman (argued), Robert S. Goodman, Golenbock & Barell, New York City, for respondent.

Before KEITH, MARTIN, and JONES, Circuit Judges.

PER CURIAM.

The National Labor Relations Board seeks enforcement of orders entered against S.E. Nichols of Ohio, Inc. on September 18, 1981. The Board's orders directed Nichols to reinstate former employee Lena Barnhardt and granted back pay awards to Barnhardt and Carolyn Moore, another former Nichols employee.

The present dispute is twelve years old and has been before this court on two previous occasions. A brief history of the conflict serves to clarify the immediate problem.

In 1970, Nichols, a self-service discount Department store, employed Barnhardt and Moore as clerks. Barnhardt was assigned to the mens' wear department, Moore to the ladies' wear department. In 1971, Barnhardt and Moore emerged as leaders in a union organizing campaign among Nichols employees. Both were discharged on April 1, 1971. In a decision issued March 17, 1972, the Board ruled that the discharges violated sections 8(a)(3) and (1) of the National Labor Relations Act, and ordered Nichols to reinstate both Barnhardt and Moore. 195 N.L.R.B. 939. A panel of this court granted enforcement of the Board's order. *NLRB v. S.E. Nichols of Ohio, Inc.*, 472 F.2d 1228 (6th Cir.1972).

In 1973, Nichols "reinstated" Barnhardt and Moore by assigning them to "scrub" duty, a menial task neither had been asked to perform during her previous tenure as a clerk. After working briefly as "scrubbers," both Barnhardt and Moore refused to continue under these conditions. In 1975, Nichols again offered both women "reinstatement" on terms manifestly less attractive than their original employment. Again, Barnhardt and Moore declined this "demotion."

In 1978, the Board initiated contempt proceedings against Nichols, alleging failure to comply with the court's 1972 order. Judge Battisti of the Northern District of Ohio was appointed special master and authorized to conduct an evidentiary hearing. On the basis of the special master's report, this court held Nichols in civil contempt. By order dated February 8, 1979, Nichols was directed to purge itself of contempt by offering "immediate and full reinstatement to Lena Barnhardt and Carolyn Moore to their former positions, or, if those positions no longer exist, to substantially equivalent positions, without prejudice to their seniority and other rights and privileges."

Accordingly, Barnhardt and Moore returned to work at Nichols on February 27, 1979. Neither, however, was reassigned to the position she had held before her unlawful discharge. Barnhardt was instructed to "float" between departments on an "as needed" basis. On March 19, 1979, Barnhardt received conflicting job assignments from different supervisors. This incident culminated in a confrontation with the store manager, who reprimanded Barnhardt publicly and in the presence of other Nichols' personnel. Barnhardt clocked out and

did not return to work. An unfair labor practice charge alleging "constructive discharge" was filed on her behalf.

Moore was also shuttled between different departments after her reinstatement. She quit, apparently without incident, in August, 1979. Moore's resignation is not an issue in the present litigation.

In mid-1979, the Board consolidated Barnhardt's complaint of "constructive discharge" with Moore's and Barnhardt's pending actions for back pay. In November, 1979, an administrative law judge conducted a five-day hearing on the matter. In a decision issued April 7, 1981, the administrative law judge found, first, that Nichols' treatment of Barnhardt during her last "reinstatement" was "designed to cause her to quit" and thus constituted a "constructive discharge." He recommended that the Board order Nichols, once again, to reinstate Barnhardt. Second, he computed back-pay awards for both Barnhardt and Moore. According to the administrative law judge, Barnhardt was entitled to $34,121.47 plus interest for the period between April 1, 1971 and February 27, 1979. Barnhardt's award was open-ended; her back pay would continue to accrue until Nichols offered her bona fide reinstatement. Moore's back pay was fixed at $22,238.17 plus interest, beginning April 1, 1971 and ending February 27, 1979.

Nichols filed voluminous exceptions to the administrative law judge's report.

On September 18, 1981, the Board issued an order adopting most of the administrative law judge's findings and recommendations. These enforcement proceedings followed.

Nichols raises several challenges to the Board's order. Our review of the record, however, persuades us that these objections are without merit.

■ First, Nichols asserts that Barnhardt was not "constructively discharged" after her February 27, 1979 "reinstatement." Nichols characterizes itself as "an employer who bent over backward to avoid confrontation and to deal fairly with the reinstated

employee ... Nothing Respondent could have done would have forestalled Barnhardt's walk-out." The crux of this issue is, of course, the proper interpretation of the testimony introduced at the administrative hearing.

■ It is well settled that a reviewing court must uphold the Board's findings of fact as long as those findings are supported by substantial evidence in the record as a whole. *Universal Camera Co. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *NLRB v. Ogle Protective Service, Inc.,* 375 F.2d 497 (6th Cir.), *cert. denied,* 389 U.S. 843, 88 S.Ct. 84, 19 L.Ed.2d 108 (1972). Reasonable findings of fact will be upheld and credibility determinations will be accepted unless they lack a rational basis. *NLRB v. Pittsburgh Steamship Co.,* 337 U.S. 656, 660, 69 S.Ct. 1283, 1285, 93 L.Ed. 1602 (1944); *NLRB v. Mt. Vernon Telephone Co.,* 352 F.2d 977, 979 (6th Cir.1965). The court may not substitute its judgment for that of the Board even if it might have reached different conclusions in a hearing *de novo. Universal Camera Co.,* 340 U.S. at 493, 71 S.Ct. at 467; *NLRB v. Tennessee Packers, Inc., Frosty Morn Division,* 339 F.2d 203 (6th Cir.1964). In the present case, the administrative record offers ample support for the findings of fact and credibility determinations which underlie the conclusion that Nichols "constructively discharged" Barnhardt in March, 1979.

■ Second, Nichols challenges the Board's method of computing the back-pay awards. It also asserts that the Board failed to offset Moore's award with her entire interim earnings and contends that Barnhardt's award should be reduced because of her alleged failure to conduct a diligent search for other employment.

■ In challenging the back pay awards, Nichols has again ventured into an area where the Board enjoys wide discretion. *NLRB v. Rutter-Rex Mfg. Co.,* 396 U.S. 258, 263, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969). Indeed,

When the Board, "in the exercise of its informed discretion," makes an order of

restoration by way of back pay, the order "should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Id.* Furthermore, in back pay proceedings, the General Counsel's burden is limited to showing what the employees would have earned had the employer not violated the Act. The *employer* bears the burden of establishing deductions from gross back pay such as interim earnings or willful failure to seek other employment. *Marlene Industries Corp. v. NLRB,* 440 F.2d 673, 674 (6th Cir.1971).

In the proceedings below, the Board used the "representative employees" method of calculating the back pay awards. Pursuant to this method, the Regional Director selected five Nichols sales clerks who were earning the same wages as Barnhardt and Moore at the time of the unlawful discharges. The earnings of these representative employees during the relevant period were totaled, by quarters, and the totals divided by five. The quarterly "average" wages, thus obtained were added together to yield the "gross" back pay awards. Finally, the gross awards were reduced by certain deductions established by Nichols, notably Barnhardt and Moore's interim earnings.

We believe that the "representative employees" method was, in this instance, a reasonable approach to the calculation of back pay awards. *NLRB v. Int. Assn. of Bridge, S. & R.I. Workers, Local 378,* 532 F.2d 1241, 1242 n. 3 (9th Cir.1976); *Midwest Hangar Co.,* 221 N.L.R.B. 911, 915 (1975), *enforced NLRB v. Midwest Hangar Co.,* 550 F.2d 1101 (8th Cir.1977). *See also NLRB v. Brown & Root, Inc.,* 311 F.2d 447 (8th Cir. 1963).

We also find that Nichols' objections to the net back pay awards are without merit. First, in calculating Moore's award, the Board took account of the fact that Moore had consistently worked two jobs while she was originally employed at Nichols. Accordingly, in deducting interim earnings from Moore's gross award, the Board considered only those wages which

were, in effect, substitutes for her wages at Nichols. The Board did not deduct "second job" earnings from Moore's gross award. Nichols' arguments to the contrary notwithstanding, we find this result eminently fair and reasonable.

Second, we decline to reverse the Board's holding that Barnhardt made diligent efforts to obtain other employment. This question, of course, turns on interpretation of the evidence presented at the hearing and thus lies within the purview of the Board's discretion. *Marlene Industries,* 440 F.2d at 674; *Golay & Co. v. NLRB,* 447 F.2d 290, 295 (7th Cir.1971). We decline to substitute our judgment on this question for that of the Board.

Enforcement granted.