UNITED STEELWORKERS OF AMERICA, LOCAL 4839, Plaintiff–Appellant,

v.

NEW IDEA FARM EQUIPMENT CORPORATION, Defendant–Appellee.

No. 89–3912.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 7, 1990.

Decided Oct. 29, 1990.

David M. Cook (argued), Kircher & Phalen, Cincinnati, Ohio, for plaintiff-appellant.

R. Jeffrey Bixler, Cooper, Straub, Walinski & Cramer, Toledo, Ohio, Mark E. Furlane (argued), Charles A. Freeman, The Quaker Oats Co., Chicago, Ill., for defendant-appellee.

Before MARTIN and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

The district court entered summary judgment for the employer in this action to enforce an arbitration award, and the union appeals. The employer did not seek to vacate or amend the arbitrator's award, but reimbursed the discharged employee for lost earnings and benefits in accordance with its interpretation of the award. The union disagreed with that interpretation and brought this action, asserting that the employer had failed to comply fully with the award. The district court agreed with the employer's construction of the award and dismissed the complaint. We affirm in part and vacate in part.

## I.

New Idea Farm Equipment Corporation (the employer) discharged Charles Friday, a long-time employee, and United Steelworkers of America, Local 4839 (the union) filed a grievance. After the prescribed grievance proceedings failed to produce a settlement, the matter was submitted to an arbitrator in accordance with a provision of the collective bargaining agreement then in force. The parties jointly stipulated that the only issues in the case were whether the employer had just cause to terminate Charles Friday and, if not, what remedy should be applied.

After conducting a hearing the arbitrator filed an "Opinion and Award," in which he

made findings and concluded that Friday had engaged in misconduct that justified disciplinary measures, but that discharge was excessive punishment. The award, in its entirety, states:

> For all of the above reasons, it is determined that the Company did not have just cause to terminate Charles Friday on February 23, 1988. Termination is reduced to a thirty calendar day suspension, during which time the Grievant shall forfeit wages and benefits. The Grievant shall be offered reinstatement as soon as practical following receipt of this Opinion and Award. Charles Friday shall also be made whole for straight time earnings and benefits that would have been payable thereafter, less, however, interim earnings and Unemployment Compensation received but not refunded.

The employer promptly reinstated Friday and computed his "straight time earnings" for the period beginning 30 days after his discharge and ending with his reinstatement. The employer calculated these earnings on the basis of an eight-hour day and five-day week. New Idea's calculations yielded lost "straight time earnings" of $12,529.76.

From the "straight time earnings" the employer deducted $5,951.25 as "interim earnings" from an insulation business that was run by Friday. At the arbitration hearing, Friday testified that he had operated the insulation business for 18 years while working with New Idea and previous employers. After the hearing, the employer requested and the union provided a statement of the net income earned by Friday from the insulation business during the time for which he was entitled to recover lost earnings. The amount deducted as "interim earnings" was based on the statement provided by the union.

The union disputed two of the employer's assumptions and offered a different calculation that would have increased Friday's reimbursement significantly. The union contended that Friday was entitled to all wages that he lost, including wages for the overtime he would have worked as well as for the regular forty-hour week. In addition, the union asserted that the employer was not entitled to deduct the entire net income from the insulation business during the time Friday was wrongfully terminated. The union argued that "interim earnings" referred only to earnings from the insulation business that were in lieu of wages from New Idea. Since Friday had earned income from the business while employed by New Idea, such "supplementary earnings" were not deductible.

The parties were unable to agree on these two issues and the union brought this action in district court.

## II.

The union argued in the district court that the award contained a "make whole" provision that required the employer to pay for all lost time. Accordingly, "straight time earnings" referred to the rate of pay, not to the hours of work for which Friday was entitled to be paid. The employer, on the other hand, maintained that "straight time earnings" required payment only for lost straight time at the regular rate of pay. With respect to the deduction of "interim earnings," the union contended that only those earnings that replaced lost wages should be counted, not those that Friday would have taken in even if he had remained employed by New Idea. The employer argued that the arbitrator heard Friday's testimony concerning the insulation business and did not qualify in any way the requirement that "interim earnings" be deducted. Thus, all earnings during the relevant period were properly deducted. Finally, the union argued that, at best, the award was ambiguous with respect to these two issues, and requested a remand to the arbitrator for clarification. To the contrary, the employer maintained that the award was unambiguous.

The district court noted that under the applicable Ohio statute the time had expired for either party to bring an action to vacate, modify or correct the award. Thus, the court found that its jurisdiction was "limited to enforcement of the award according to its terms." In determining that

the employer had fully complied with the award the court stated that it did not "find the disputed language to be ambiguous or particularly difficult to understand." The award did not require interpretation beyond the plain meaning of the language employed by the arbitrator. The court concluded that "'straight time earnings' means hourly rate times 40 hours per week and that 'interim earnings' means all interim earnings, including earnings from self-employment."

Also, without citation of authority, the district court stated that it did not have the option to remand to the arbitrator. This conclusion apparently was based upon the finding that there had been no timely action to vacate, modify or correct the award.

### III.

The parties have repeated their district court arguments on appeal, with some variations. The union emphasizes the award's requirement that Friday "be made whole for straight time earnings and benefits that would have been payable thereafter." If he had not been discharged, the union states, Friday would have worked some overtime hours in addition to the regular 40–hour week. Thus, to be made whole for the "earnings and benefits that would have been payable thereafter" he must be paid for the overtime hours he would have worked as well as for the regular workweek. The union also argues more forcefully on appeal for a remand to the arbitrator as an alternate remedy and disputes the district court's determination that it lacked authority to make such a remand.

The employer contends that the union's failure to file this action within 90 days after entry of the award barred all relief. It argues that in reality this was an action to vacate the arbitration award and substitute a new one adding overtime pay and eliminating the deduction of Friday's income from the insulation business as "interim earnings."

The employer also argues that the district court's interpretation of the award was clearly correct. If the arbitrator had intended to cover only the rate of pay and not the hours for which Friday was to be paid, he would have used "straight-time rate of pay" as employed in the collective bargaining agreement rather than "straight time earnings" to describe the payment to which Friday was entitled. Further, the award required the deduction of "interim earnings" without qualification.

Finally, the employer asserts that there is no ambiguity in the award. An award may be remanded to an arbitrator for clarification, the employer maintains, only if the ambiguity is "patent, glaring, or apparent on [its] face." Here, the union is trying to create an ambiguity that is not apparent on the face of the award.

### IV.

We will deal with the various arguments of the parties in sequence, looking first at two procedural questions.

### A.

■ The district court was not required to dismiss the union's complaint as untimely filed. This action was filed under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which does not contain a limitations provision. Thus, timeliness is determined by reference to the appropriate state statute of limitations. *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966). The appropriate statute of limitations in an Ohio case seeking to vacate, modify or correct an arbitration award is Ohio Revised Code (O.R.C.) § 2711.13, which provides a three-month period for such an action. *D'Andrea v. American Postal Workers Union*, 700 F.2d 335, 337 (6th Cir.1983). On the other hand, O.R.C. § 2711.09 provides a one-year period for bringing an action to confirm an award. Thus, the proper characterization of the action determines its timeliness.

■ We find that in the present case, the union did not seek to vacate, modify or correct the award. It did not take issue with the arbitrator's decision that the employer did not have just cause to terminate

Friday and that only a 30–day suspension was warranted. Instead, the union contended that the employer had complied only partially with the award, and it sought a court order to enforce the award by requiring full compliance. Thus, this action is characterized properly as one to confirm an award. The action was filed approximately seven months after the award was made, which is well within the one-year limitations period of O.R.C. § 2711.09, the appropriate state statute.

### B.

■ We believe the district court erroneously concluded that it lacked authority to remand to the arbitrator for a clarification of the award. Because there had been no timely motion to vacate, modify or correct the award, the district court could not have remanded for the purpose of modifying or correcting the award. But it did have the authority to remand for clarification. This court has so held in at least four cases brought to enforce arbitration awards.

In *United Steelworkers v. Timken Roller Bearing Co.*, 324 F.2d 738, 740 (6th Cir.1963), we stated that a court is "not required to enforce an award that is not clear as to its meaning and effect." When such a defect is found in an award, it should be sent back to the arbitrator for clarification. *Id.* at 741–42.

In *Printing Pressman's Union v. Cello–Foil Products, Inc.*, 459 F.2d 754, 756–57 (6th Cir.1972), we stated that parties who were unable to agree on the effect of an award that "itself, contains a patent ambiguity or uncertainty" should be required to submit their dispute to the arbitrator for interpretation and resolution.

*I.B.E.W., Local 369 v. Olin Corp.*, 471 F.2d 468 (6th Cir.1972), was an action by a union to compel an employer to comply with an award. That case has many similarities to the present one. The employer had discharged an employee, but the arbitrator found this punishment too severe and ordered a 30–day suspension. The award ordered the employee reinstated and "compensated for loss of normal earnings." *Id.* at 469–70. Olin reinstated the employ-

ee but refused to give him back pay because he had earned more from other employment than he would have earned at Olin. The collective bargaining agreement did not refer to outside earnings in requiring that a wrongfully discharged party recover "normal earnings for the time lost" and neither party stressed outside earnings in their presentations to the arbitrator. *Id.* at 471–72. This court found that when the award was read with the arbitrator's opinion, there was a patent ambiguity. We vacated the district court judgment, which had attempted to calculate the back pay due, and directed a remand to the arbitrator for determination of whether the employer was entitled to a credit and computation of any amount due. *Id.* at 472–73.

We observed in *Cleveland Paper Handlers v. E.W. Scripps Co.*, 681 F.2d 457, 459–60 (6th Cir.1982), that in enforcement actions courts may not go beyond an award to decide questions that the arbitrator did not decide and stated that an ambiguous award may not be enforced and should be remanded to the arbitrator for clarification. An ambiguity in the opinion is not enough, however; the ambiguity must be in the award itself. *Id.* at 459–60. See also *I.B.E.W. Locals v. New England Telephone & Telegraph Co.*, 628 F.2d 644, 647 (1st Cir. 1980) ("it is firmly established within the federal labor law that a district court may, in the context of a section 301 proceeding, resubmit an existing arbitration award of the type here in issue to the original arbitrators for 'interpretation' or 'amplification' ").

We realize that the district court judge did not consider in depth the question whether he had the authority to remand to the arbitrator in the event he found an ambiguity. He believed he could remand only to modify or correct an award. Nevertheless, in an enforcement action the authority for a remand to resolve an ambiguity is clear.

### V.

### A.

■ The district court held that the arbitration award was unambiguous. Unlike

the district court, we see uncertainty and ambiguity in the award to the extent it directed that Friday "be made whole for straight time earnings and benefits that would have been payable thereafter." The award appears to reflect but not follow precisely the language of the collective bargaining agreement, which provides in part:

> Should it be determined by the Company or by an arbitrator that an injustice has been dealt the employee with regard to his discharge or suspension, the Company shall reinstate the employee *and pay compensation for time lost at the straight-time hourly rate of pay.*

Article 12, Section 1, paragraph 292 (emphasis added).

The question is: Will Friday "be made whole for straight time earnings ... that would have been paid thereafter" if he receives nothing for overtime hours he would have worked but for his wrongful discharge? The union does not argue that Friday should be paid at the overtime rate for overtime hours he would have worked during the relevant period. Rather, the union maintains that he should be paid for those hours only as his regular straight-time rate.

The employer makes a strong argument that there is no ambiguity and that the words, "straight time earnings ... that would have been payable thereafter" must be given their ordinary meaning. The employer equates "straight time earnings" with earnings from those hours worked at straight-time rates, that is, Friday's pay for a standard 40–hour work week. Yet, if Friday would have routinely worked overtime as the union claims, such a construction would not compensate him for all of his lost time.

The direction in the award that Friday "be made whole for straight time earnings and benefits that would have been paid thereafter" is ambiguous on its face. The collective bargaining agreement provides for compensation for time lost upon reinstatement of a wrongfully discharged employee. The agreement provides the rate at which such compensation is to be paid— "the straight-time rate of pay." Neither the agreement nor the award defines "time lost," however. In light of the undenied assertion that Friday would have worked some overtime hours during the relevant period if he had not been terminated, we cannot state with certainty how many hours the award requires compensation for; only the rate is certain. There is no indication that overtime was discussed in any presentation to the arbitrator, and so far as the record discloses, he did not consider overtime. The arbitrator can easily clarify this issue, and then the court will know precisely what we are being asked to confirm and enforce. As we stated in *Steelworkers v. Timken Roller Bearing Co.*, 324 F.2d at 740, a court is "not required to enforce an award that is not clear as to its meaning and effect."

### B.

■ We have no such doubt concerning the provision of the award relating to "interim earnings." Friday testified before the arbitrator that he was engaged in his own insulation business and that he worked "day or night." This case is different from *Olin*, where neither party stressed outside earnings in the proceedings before the arbitrator. The transcript here shows considerable inquiry into Friday's efforts to mitigate his damages, including both seeking other employment and continuing to operate his own business. With this information in hand the arbitrator placed no limit on the requirement that Friday's "interim earnings" be deducted in computing the total amount due.

The union cites authority for the proposition that where an employee held outside employment prior to his discharge and continued that employment during the back pay period, the supplemental earnings from this employment should not be included as "interim earnings." See *N.L.R.B. v. Miami Coca–Cola Bottling Co.*, 360 F.2d 569 (5th Cir.1966). At most, only a portion of such supplemental earnings should be included as "interim earnings," that is, the portion attributable to increased time spent in the outside employment after discharge from regular employment. See *N.L.R.B. v.*

**970**

*S.E. Nichols of Ohio, Inc.*, 704 F.2d 921 (6th Cir.), *cert. denied,* 464 U.S. 914, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983). Neither of these cases involved arbitration. In both, the National Labor Relations Board sought to enforce its own back pay orders resulting from findings of unfair labor practices. We do not believe these decisions control this case, where an arbitrator has chosen to require deduction of "interim earnings" without qualification after being advised of the nature of the employee's interim employment.

The judgment of the district court is affirmed in part and vacated in part. The district court will remand the case to the arbitrator who made the original award for the limited purpose of providing clarification with respect to his order that Friday "be made whole for straight time earnings ... that would have been payable thereafter."

Each party will pay its own costs on this appeal.

DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.

I concur in all but Part V–A of the court's opinion, and I respectfully dissent as to that part.

In the present context, the term "interim earnings" strikes me as ambiguous. I simply do not know whether it was intended to signify all outside earnings or merely the marginal earnings which, as the transcript itself suggested, were attributable to the increased time Mr. Friday was able to devote to his outside business during the interim period.

Mr. Friday will not be made whole for the full loss suffered during the interim period if his normal outside earnings are deducted in addition to the marginal earnings made possible by his absence from the factory. Perhaps the arbitrator really intended that Friday be penalized by deduction of the outside earnings he would have received after the 30th day anyway, but if so, the arbitrator's choice of the words "made whole" seems infelicitous. I would ask the arbitrator to clarify both the interim earnings question and the overtime question.