EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Raúl Zambrana García<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, Departamento de Salud, Oficina de Gerencia y Presupuesto<br><br>Peticionarios | Certiorari<br><br>2020 TSPR 47<br><br>204 DPR \_\_\_\_\_ |

Número del Caso: CC-2016-694

Fecha: 15 de junio de 2020

Tribunal de Apelaciones:

    Región Judicial de San Juan, Panel I

Oficina del Procurador General:

    Lcdo. Luis A. Román Negrón
    Procurador General

    Lcda. Karla Z. Pacheco Álvarez
    Subprocuradora General

    Lcda. Miriam Álvarez Archilla
    Procuradora General Auxiliar

    Lcda. Gisela Rivera Matos
    Procurador General Auxiliar


 Abogado de la parte recurrida:

    Lcdo. Nelson Rosario Rodríguez

Materia: Derecho Laboral: Definición del concepto "ingreso neto" a ser deducida de la compensación por concepto de salarios dejados de percibir que un patrono adeuda a un empleado público cesanteado ilegalmente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Raúl Zambrana García

     Recurrido

       v.

                           CC-2016-0694

Estado Libre Asociado de Puerto Rico, Departamento de Salud, Oficina de Gerencia y Presupuesto

     Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 15 de junio de 2020.

La controversia que tenemos ante nuestra consideración requiere que definamos cuál es el "ingreso neto" que se va a deducir de la compensación por concepto de salarios dejados de percibir que un patrono adeuda a un empleado público cesanteado ilegalmente. Por los fundamentos que exponemos a continuación, concluimos que "ingreso neto" se define como el salario que devengó el empleado despedido por trabajos obtenidos y realizados durante la cesantía correspondiente a la cantidad de horas que habría trabajado para el patrono si no le hubiera cesanteado, menos los gastos en que incurrió para devengarlo.

I

El Dr. Raúl Zambrana García (doctor Zambrana) trabajó para el Departamento de Salud desde el año 1978 hasta el 2000, cuando fue cesanteado. Posteriormente, apeló la decisión en la Junta de Apelaciones del Sistema de Administración de Personal (JASAP).[1] Tras varios incidentes procesales, la JASAP emitió una resolución en la que declaró ha lugar la apelación y ordenó la reinstalación y el pago de los haberes dejados de percibir, según resuelto por este Tribunal en el caso Hernández v. Mun. de Aguadilla, 154 DPR 199 (2001). Finalmente, el doctor Zambrana fue reinstalado en su antiguo puesto de jefe del Hospital Regional de Ponce el 16 de noviembre de 2011. Al ser reinstalado, se le liquidaron las cantidades correspondientes a las licencias de vacaciones y enfermedad, y el bono de navidad. Sin embargo, no se le pagó al doctor Zambrana ninguna cuantía por salarios dejados de percibir.

Ante esto, el doctor Zambrana presentó una demanda de ejecución de sentencia contra el Departamento de Salud el 4 de septiembre de 2013, para que se le pagara la cuantía por los salarios dejados de percibir desde el año 2000 que fue cesanteado hasta el 2011 que fue reinstalado. El gobierno contestó la demanda en representación del Departamento de Salud como patrono y negó la existencia de la alegada deuda.

---

[1] En 2004 se aprobó la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184-2004, 3 LPRA 1461 et seq., y la JASAP pasó a llamarse Comisión Apelativa de Administración de Recursos Humanos. Posteriormente se aprobó el Plan de Reorganización Núm. 2 de 2010, 3 LPRA Ap. XIII, y pasó a llamarse Comisión Apelativa del Servicio Público.

En síntesis, adujo que le pagó al doctor Zambrana un total de $50,433.18 en concepto de liquidación de licencias por enfermedad y vacaciones, así como por bono de Navidad, dejadas de percibir. Agregó que, en el caso del salario dejado de percibir, solo le correspondía al doctor Zambrana aquella cuantía que este hubiese dejado de devengar como consecuencia de su destitución luego de reducírsele cualquier cuantía que hubiera recibido en su práctica privada durante el tiempo en que estuvo cesanteado. Indicó que, en el caso del doctor Zambrana, no procede el pago por salario dejado de percibir porque sus ingresos de la práctica privada excedieron el ingreso que hubiera recibido como empleado del Departamento de Salud de no haber sido despedido.

Culminado el descubrimiento de prueba, las partes sometieron sus respectivas mociones de sentencia sumaria. El Departamento de Salud argumentó en su moción de sentencia sumaria que al realizar el cálculo y deducir las cantidades que ganó el doctor Zambrana en su práctica privada no le adeudaban salario alguno. Además, adujo que, por error, se le pagó al doctor Zambrana $41,639.76 por concepto de licencia de enfermedad y vacaciones acumuladas en exceso, pagos que no correspondían a los salarios dejados de percibir. Por ello, peticionó que se restara la referida cantidad de la cuantía por haberes dejados de percibir que se le adeudaban al doctor Zambrana, de entenderse que estos procedían.

Por su parte, en su moción de sentencia sumaria, el doctor Zambrana sostuvo que siempre tuvo una segunda fuente de ingreso, por lo que no procedía que se descontaran los ingresos generados en su práctica privada de la suma que habría cobrado de no haber sido cesanteado. Expresó que la normativa vigente disponía que la cantidad a descontarse de los salarios dejados de percibir correspondía a aquellos trabajos que se obtuvieron y se realizaron luego de la cesantía. Cabe destacar que el doctor Zambrana no atendió en su solicitud de sentencia sumaria el asunto del aumento que pudieron haber tenido los ingresos producto de su práctica privada luego de la cesantía.

El Tribunal de Primera Instancia emitió una sentencia en la que proveyó ha lugar a la moción de sentencia sumaria que presentó el gobierno, por lo que desestimó la demanda del doctor Zambrana. Entendió que, de acuerdo con lo resuelto en el caso de Hernández v. Mun. de Aguadilla, supra, procedía que se descontara el sueldo que el doctor Zambrana devengó en su práctica privada durante el tiempo que estuvo cesanteado.

Inconforme, el doctor Zambrana apeló al Tribunal de Apelaciones. Adujo que el foro primario erró al acoger el cálculo realizado por el Departamento de Salud en lugar del cálculo que indica los documentos estipulados por las partes y al concluir que los ingresos de su práctica privada aumentaron tanto que sobrepasaron la cantidad de sus haberes dejados de percibir. El Tribunal de Apelaciones revocó el

dictamen del foro primario. Concluyó que la cifra utilizada por el Tribunal de Primera Instancia en su sentencia no era la correcta. Explicó que lo que debió deducirse era el aumento en ingreso que generó el doctor Zambrana en su práctica privada. Al aplicar la nueva fórmula, concluyó que el doctor Zambrana tenía razón al indicar que el foro primario erró en la cantidad total que utilizó. Finalmente, el foro apelativo intermedio determinó que el balance adeudado al doctor Zambrana por concepto de haberes dejados de percibir era de $373,810.50. Sin embargo, determinó que el pago de $41,819.76 efectuado por el Departamento de Salud por concepto de licencia de vacaciones y enfermedad acumuladas era improcedente, por lo que lo restó del monto calculado. Así la suma final adeudada al doctor Zambrana pasó a ser $331,990.74.[2]

En desacuerdo, el gobierno de Puerto Rico presentó una moción de reconsideración en la cual alegó que la cantidad que el Tribunal de Apelaciones utilizó como base para hacer los cálculos era incorrecta, ya que a esta no se le hicieron los descuentos que requiere la ley. El foro apelativo intermedio reconsideró su dictamen para ordenar al Tribunal de Primera Instancia que dedujera las aportaciones del Seguro Social, Medicaid, Sistema de Retiro y Asociación de Empleados.

---

[2] Esta determinación del Tribunal de Apelaciones no fue objeto de revisión ante este foro.

El gobierno, inconforme con el dictamen del Tribunal de Apelaciones, acudió ante este foro mediante una solicitud de certiorari el 22 de julio de 2016. Planteó que el Tribunal de Apelaciones erró al negarse a deducir de la compensación el ingreso que devengó el doctor Zambrana durante el tiempo que este estuvo cesanteado. Además, alegó que el Tribunal de Apelaciones debió devolver el caso al foro primario porque existen controversias de hechos materiales que impiden que se dicte sentencia sumaria.

Posteriormente, expedimos el auto y el recurso quedó sometido el 16 de marzo de 2017. Sin embargo, el gobierno presentó un aviso de paralización de los procedimientos el 31 de mayo de 2017, en virtud de la petición de quiebra que presentó el gobierno de Puerto Rico al amparo Título III del Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), 48 USC sec. 2162. De acuerdo con la normativa de quiebra adoptada por PROMESA, todos los casos que hayan comenzado o que hayan podido comenzar antes de presentarse la petición de quiebra quedan automáticamente paralizados hasta que culmine el proceso o el tribunal federal con jurisdicción autorice la continuación del pleito. 48 USC sec. 2161(a). El 6 de junio de 2018 el doctor Zambrana compareció y nos notificó que el Tribunal Federal para el Distrito de Puerto Rico dejó sin efecto parcialmente la paralización del caso, para que resolvamos este recurso. Constatado esto, procedemos a resolver la controversia que tenemos ante nuestra consideración.

II

La Sec. 7.17 de la Ley de Personal del Servicio Público, Ley Núm. 5 de 14 de octubre de 1975, 3 LPRA sec. 1397 (ed. 2000), vigente al momento en que se presentó la apelación, dispone que se ordenará el pago total o parcial de los salarios dejados de percibir desde la fecha de la destitución hasta la restitución. Asimismo, se ordenará el pago de todos los beneficios marginales a los que el empleado cesanteado hubiese tenido derecho, si, luego del proceso de apelación, la persona es restituida a su puesto o a un puesto similar.[3]

En Hernández v. Mun. de Aguadilla, supra, nos enfrentamos a una controversia similar a la que tenemos ante nuestra consideración e interpretamos esta disposición. En aquella ocasión unos empleados fueron cesanteados por el Municipio de Aguadilla. Los empleados apelaron la decisión en la JASAP, prevalecieron y fueron reinstalados a sus posiciones. Además, la JASAP ordenó el pago de los haberes dejados de percibir y que se descontara cualquier compensación recibida por servicios ofrecidos en el sector público durante el tiempo de la cesantía. El Municipio de Aguadilla recurrió de esta decisión ante el Tribunal de

---

[3] En 2004 se enmendó la Ley de Personal del Servicio Público y se aprobó la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184-2004, 3 LPRA 1461 et seq. (ed. 2006) La ley contiene una disposición equivalente, el Art. 13.9 (9), 3 LPRA sec. 1468h (ed. 2006). Posteriormente, se volvió a enmendar la ley y se aprobó el Plan de Reorganización Núm. 2 de 2010, 3 LPRA Ap. XIII, el cual contiene una disposición equivalente en el Art. 8(i), 3 LPRA Ap. XIII.

Apelaciones. El foro apelativo intermedio modificó el dictamen de la JASAP, pues entendió que se debían descontar todos los salarios que recibieron los empleados, independientemente de su procedencia. Inconformes con ese dictamen, los empleados municipales acudieron ante este foro y alegaron que el Tribunal de Apelaciones erró al concluir que se debía descontar todo salario que los empleados obtuvieron durante el tiempo de la cesantía.

Tras evaluar la controversia, confirmamos al foro apelativo intermedio y concluimos que procedía que se descontara de la cantidad de salarios dejados de percibir cualquier compensación por trabajos obtenidos y realizados durante el tiempo de la cesantía, independientemente de su origen. Íd. pág. 209. Para llegar a esta conclusión analizamos jurisprudencia de este Tribunal que analizó la disposición similar de la Ley de Relaciones del Trabajo, Ley Núm. 130 de 8 de mayo de 1945, 29 LPRA 61 et seq. Mencionamos que el propósito de la ley es reparador, por lo que su fin es restituir al empleado afectado a la misma posición que hubiera estado de no haber ocurrido el acto ilegal. También, analizamos el propósito de la Sección 7.17 de la Ley de Personal del Servicio Público, supra, y concluimos que el propósito de esa disposición es también reparador, pues busca colocar al empleado en la misma posición en que hubiese estado de no haber sido destituido ilegalmente. De esta forma, es necesario descontar el ingreso neto que recibió el empleado por cualquier otro trabajo obtenido y realizado

en el periodo que estuvo cesanteado. Íd., pág. 209. Resolver lo contrario, dijimos entonces, significaría que el empleado cesanteado recibiría una doble compensación, lo que derrota el propósito reparador que contempla la sección. Hernández v. Mun. de Aguadilla, supra, pág. 209, citando a J.R.T. v. Ceide, 89 DPR 674, 686 (1963). La doble compensación, de hecho, está prohibida expresamente a los empleados públicos en el Art. VI, Sec. 10, de la Constitución de Puerto Rico, 1 LPRA, Tomo 1. Por eso, hemos resuelto que no se le concederá a un empleado público compensación adicional por los servicios prestados, en este caso los que el empleado público habría prestado de no haber sido cesanteado. Véase, Estrella v. Mun. de Luquillo, 113 DPR 617, 620 (1982).

La controversia en Hernández v. Mun. de Aguadilla, supra, no nos requirió definir lo que es "ingreso neto". Sin embargo, este caso nos da esa oportunidad, ya que la controversia gira en torno a la fórmula para obtener la cuantía del ingreso que el empleado cesanteado dejó de devengar como consecuencia de la cesantía. Como mencionamos anteriormente, en Hernández v. Mun. de Aguadilla, supra, págs. 206-207, incorporamos las interpretaciones que se hicieron de disposiciones similares sobre empleados privados, ya que tienen un propósito similar. Al analizar esos casos, hicimos referencia a casos federales que interpretaban disposiciones similares en la ley federal. Íd., pág. 206; J.R.T. v. Caide, 89 DPR 674, 684-686 (1963). En esta ocasión, también, hacemos referencia a esos casos

federales para explicar lo que es ingreso neto. El propósito de calcular el ingreso neto es cumplir con que el remedio no sea uno punitivo, sino reparador al empleado cesanteado. N.L.R.B. v. Reed & Prince Mfg.Co., 130 F.2d 765, 771 (1er Cir. 1942). De esa forma, solo se descuentan de la compensación aquellos ingresos que sustituyeron los que el empleado habría percibido de su antiguo empleo si no hubiese sido cesanteado.

Ahora bien, en el contexto de la controversia que atendemos, ingreso neto es aquel salario que el empleado despedido devengó en otro trabajo y que correspondería a las horas que este habría laborado con el patrono que lo cesanteó, menos lo que gastó para realizar dicho trabajo. Phelps Dodge Corp. v. N.L.R.B., 313 US 199, esc. 7 (1941); N.L.R.B. v. Reed & Prince Mfg.Co., supra, 771. Nótese que esta definición es la base de la fórmula para computar ingreso neto.

Para ello, en primer lugar, calcularemos la porción del ingreso que el empleado cesanteado ganó en el trabajo que obtuvo y realizó durante el tiempo de la cesantía y que corresponde a las horas que el empleado habría trabajado en el empleo del que fue cesanteando **(I)**. Íd.; N.L.R.B. v. S.E. Nichols of Ohio, INC., 704 F.2d 921, 924 (6to cir. 1983).

A la cantidad anterior, que identificamos como **(I)**, se le restará los gastos en que incurrió el empleado para llevar a cabo el trabajo que obtuvo y realizó luego de ser cesanteado **(G)**. The matter of Reed & Prince Mfg. Co., 12

N.L.R.B. 944, 977, n. 18 (1939) ("*net earnings" is meant earnings less expenses, such as for transportation, room, and board incurred by an employee in connection with obtaining work and working elsewhere than for the respondent, which would not have been incurred but for his unlawful discharge and the consequent necessity of seeking employment elsewhere*).Es decir, como el despido causó que el empleado incurriera en el gasto, el patrono no se puede beneficiar reclamándolo como parte del descuento a la compensación.

En palabras sencillas, se toma lo que el empleado devengó en su otro empleo, durante las horas que habría trabajado para el patrono que lo cesanteó (I). A esa suma se le resta los gastos incurridos para devengar ese ingreso (G). El resultado de ese cálculo es el ingreso neto (I-G=IN) Véanse, Phelps Dodge Corp. v. N.L.R.B., supra; N.L.R.B. v. Reed & Prince Mfg.Co., supra, 771.

Entonces, al salario total que el empleado dejó de devengar mientras estuvo cesanteado **(S)** se le resta el ingreso neto (**IN**). El remanente de este cálculo, si alguno, es la cantidad que el patrono pagará al empleado restituido por concepto de salario dejado de devengar que identificamos como cantidad total **(CT)** en la siguiente fórmula: **S-IN=CT.**

Ahora bien, en caso de que el empleado cesanteado tenga un segundo empleo al momento de la cesantía y continúe desempeñándose en este, solo se descontará la cantidad de horas adicionales -si alguna- que el empleado dedicó a su

segundo empleo luego de la cesantía y que correspondan a la cantidad de horas que el empleado dedicaba a su empleo del cual fue cesanteado.

Así, al momento de calcular el "ingreso neto" no se considerará en el cálculo el ingreso correspondiente a la misma cantidad de horas que el empleado dedicaba a su segundo trabajo antes de la cesantía. Véanse Kansas Refined Helium Co., 252 NLRB 1156, 1158 (1980) (*"The law is settled that moneys earned during the period of discrimination from a supplemental job which a discriminatee also held during his or her employment with a respondent employer are not deductible from gross backpay as interim earnings."*); Matter of Pusey, Maynes & Breish Co., 1 NLRB 482, 486-487 (1936)(la Junta Nacional de Relaciones del Trabajo resolvió que el ingreso que un empleado ilegalmente cesanteado generó como músico durante la cesantía no se podía descontar de la suma de salarios dejados de percibir, pues el empleado se desempeñaba como músico antes de la cesantía).

Esto es sumamente importante, ya que evita que, de la compensación por ingreso dejado de percibir, se deduzca la cantidad que comoquiera el empleado hubiese podido generar de no haber sido despedido.

Por lo tanto, si con posterioridad a la cesantía el empleado despedido no aumenta la cantidad de horas que dedicaba a su segundo empleo antes de la destitución, no procedería descontar de la compensación ningún ingreso proveniente de esa fuente. Esto es así, ya que se entiende

que ese ingreso no sustituyó lo que hubiese devengado del empleo del cual fue despedido, en la medida en que es el producto de la misma cantidad de horas que el empleado dedicaba a ese trabajo antes de la cesantía. Al respecto, cabe recordar que en Hernández v. Mun. de Aguadilla, supra, se dijo que lo que corresponde descontar de la compensación son los ingresos netos por trabajos que **se obtuvieron y realizaron** luego de la cesantía.

III

En la controversia que tenemos ante nuestra consideración, el doctor Zambrana fue restituido a su puesto el 16 de noviembre de 2011. Cuando el galeno fue cesanteado, este ya tenía un segundo empleo (su práctica privada), el cual continuó realizando durante el periodo en que estuvo cesanteado. Conforme a lo anterior, para calcular lo que el hospital le adeuda al doctor Zambrana aplicaremos la fórmula antes mencionada. Primero, se computará el ingreso que el galeno generó en su práctica privada tras su despido y que, a su vez, corresponderían a la cantidad de horas que el doctor Zambrana habría trabajado en el hospital de no haber sido cesanteado (I). Al hacer ese cálculo no se incluirá la compensación que el doctor Zambrana recibió por razón de la práctica privada correspondiente a la cantidad de horas que el galeno ya dedicaba a ese trabajo antes de la cesantía. Al producto de este cálculo se le restarán los gastos incurridos por este para realizar dicha práctica (G). El resultado de esta operación nos brinda el ingreso neto.

Luego, al salario total que el galeno dejó de devengar mientras estuvo cesanteado (S) se le sustrae el ingreso neto (IN). Entonces, de existir algún remanente, este será la cantidad que el hospital le pagará al doctor Zambrana (CT).

Como podemos ver, el foro apelativo intermedio se equivocó al concluir que el dinero que corresponde descontar para calcular el ingreso neto es el exceso de ganancia que el doctor Zambrana recibió cada año que estuvo cesanteado. Como mencionamos, "ingreso neto" se refiere a la remuneración que percibió el empleado por trabajo obtenido y realizado luego de la cesantía en la misma cantidad de horas que hubiese trabajado para el patrono que lo cesanteó, menos los gastos en que incurrió para devengar esa remuneración.

IV

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, trata todo lo relacionado a la sentencia sumaria. El propósito de la sentencia sumaria es resolver de manera rápida los litigios civiles en los que no exista una controversia de hechos real o sustancial sobre algún hecho material que requiera la celebración de un juicio en su fondo. Roldán Flores v. M. Cuebas, et al., 199 DPR 664, 676 (2018); Rodríguez García v. Universidad Carlos Albizu, Inc., 199 DPR 929, 940 (2018). Hemos dicho que existe una controversia real cuando para disponer de la misma es necesario que el juez celebre un juicio ordinario. Ramos Pérez v. Univisión de P.R., 178 DPR 200, 213 (2010). Asimismo, hemos definido que

un hecho material es aquel que, de acuerdo con el derecho aplicable, puede alterar la forma en que se resuelve un caso. Meléndez González v. M. Cuebas, 193 DPR 100, 110 (2015). De la prueba que acompaña la sentencia sumaria debe surgir de manera preponderante que no existe controversia sobre hechos medulares del caso. Jusino et als. v. Walgreens, 155 DPR 560, 577 (2001).

Una sentencia resuelve finalmente la cuestión litigiosa. Regla 42 de Procedimiento Civil, 32 LPRA Ap. V; Peerless Oil v. Hermanos Pérez, 186 DPR 239, 251 (2012). Ausente la prueba necesaria para realizar el cálculo para determinar el monto de la compensación al doctor Zambrana, no es posible que el Tribunal de Primera Instancia dicte sentencia sumaria en esta etapa de los procedimientos.

Conforme con lo anterior, revocamos la sentencia del Tribunal de Apelaciones. De esta forma, devolvemos el caso al Tribunal de Primera Instancia para que continúen los procedimientos y se calcule la compensación por el salario dejado de percibir por el doctor Zambrana, conforme a lo aquí expuesto.

Se dictará Sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Raúl Zambrana García

    Recurrido

      v.

                        CC-2016-0694

Estado Libre Asociado de Puerto Rico, Departamento de Salud, Oficina de Gerencia y Presupuesto

    Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 15 de junio de 2020.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, revocamos la sentencia del Tribunal de Apelaciones. De esta forma, devolvemos el caso al Tribunal de Primera Instancia para que continúen los procedimientos y se calcule la compensación por el salario dejado de percibir por el doctor Zambrana, conforme a lo aquí expuesto.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez disiente con opinión escrita, a la que se une el Juez Asociado señor Rivera García. El Juez Asociado señor Colón Pérez disiente y emite la siguiente expresión:

> El Juez Asociado señor Colón Pérez disiente del lamentable curso de acción seguido por una mayoría de esta Curia en el presente caso. Ello, por fundamentos similares a los expuestos por el entonces Juez Asociado de este Tribunal, señor Fuster Berlingeri, en su Opinión Disidente en *Hernández v. Mun. de Aguadilla*, 154 D.P.R. 199 (2001),

precedente en que esta Corte fundamenta -- gran parte -- de la decisión que hoy emite.

En el referido caso, al tratar el tema de los salarios que han de pagarse al empleado público que es despedido ilegalmente de su empleo -- luego de un cuidadoso y cavilado examen de la Sec. 7.17 de la Ley de Personal del Servicio Público de Puerto Rico, 3 LPRA Sec. 1397 -- el Juez Asociado señor Fuster Berlingeri sentenció lo siguiente:

> …[M]e parece que la única interpretación correcta de la Sec. 7.17 en cuestión es que no procede descontar de los salarios que han de pagarse al empleado público despedido ilegalmente aquellos ingresos que éste haya recibido de la empresa privada mientras estaba cesanteado del cargo público. Tal es la evidente intención legislativa, que nos obliga. Resolver de otra forma no sólo va en contra de los más fundamentales principios de hermenéutica y de nuestra propia jurisprudencia [la jurisprudencia vigente en aquel momento], sino que resulta en una injusticia contra el empleado público que ya sufrió el vejamen del despido ilegal. Además, socava un importante disuasivo para que los patronos gubernamentales respeten la ley.
>
> La mayoría opta por otro curso de acción, que considero muy desacertado. Otra vez más la mayoría opta por una interpretación estatutaria errónea, que socava injustificadamente la condición y los derechos de unos trabajadores. Por ello, yo disiento.

Sin lugar a dudas, las anteriores expresiones del Juez Asociado señor Fuster Berlingeri, emitidas hace ya más de quince (15) años atrás, a nuestro juicio, hoy mantienen toda su vigencia. Así las cosas, -- en vez de elaborar en la norma establecida en *Hernández v. Mun. de Aguadilla*, *supra*, como hoy hace la mayoría de este Tribunal -- hubiésemos aprovechado esta oportunidad para revocar el injusto precedente establecido por esta Curia en dicho caso.

Por no ser ese el curso de acción seguido por una mayoría de este Tribunal en la causa de

epígrafe, como ya adelantamos, respetuosamente disentimos.

El Juez Asociado señor Rivera García disiente sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez no intervino.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Raúl Zambrana García<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, Departamento de Salud, Oficina de Gerencia y Presupuesto<br><br>Peticionarios | CC-2016-0694 | Certiorari |

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ a la cual se une el Juez Asociado señor RIVERA GARCÍA

San Juan, Puerto Rico, a 15 de junio 2020.

Por considerar que un empleado cesanteado **ilegalmente** que no se cruzó de brazos y obtuvo ingresos privados para remediar los embates de esa ilegalidad, no puede ser castigado nuevamente al ordenar que se le descuente lo devengado en ese ámbito, respetuosamente disiento.

En nuestro ordenamiento, las personas despedidas ilegalmente de empleos gubernamentales tienen derecho a ser restituidos en sus puestos y a recibir "el pago total o parcial de los salarios dejados de percibir por éste desde la fecha de la efectividad de la destitución, y la concesión de todos los beneficios marginales" a los que hubiese tenido derecho. Ley de Personal del Servicio Público, Ley Núm. 5 de

14 de octubre de 1975, (Parte 2) 1975 LPR 828. La Asamblea Legislativa no ha alterado esta disposición en leyes posteriores. Véase, Art. 2 de Plan de Reorganización de la Comisión Apelativa del Servicio Público, Ley Núm. 2 del 26 de julio de 2010, 3 LPRA Ap. XIII.

De este modo, los patronos gubernamentales están obligados a resarcir a los servidores públicos por el período de tiempo que estuvieron cesanteados ilegalmente. Este remedio "tiene un propósito que va más allá del interés de indemnizar a la víctima. Sirve, además, como un freno para evitar los despidos ilegales y la perturbación que ello puede ocasionar a una sana administración pública". Municipio de Coamo v. Tribunal Superior, 99 DPR 932, 941 (1971).

Sin embargo, este Tribunal pautó, a mi juicio desacertadamente, que la persona despedida ilegalmente que obtiene otro empleo mientras se tramita su causa de acción tendrá derecho a una compensación menor. Hernández v. Mun. de Aguadilla, 154 DPR 199, 209 (2001). Ello, pues se deducirá de la compensación adeudada **todo** ingreso que reciba durante ese período de cesantía ilegal. En su lugar, lo que procede es descontar los ingresos devengados si éstos provienen de un trabajo del sector público, pues la Constitución de Puerto Rico impide que una persona reciba más de un sueldo gubernamental simultáneamente. Art. VI, Sec. 10, Const. PR, LPRA, Tomo 1. Como puede apreciarse, la única limitación contemplada por nuestro ordenamiento es en torno a los salarios públicos.

En consecuencia, discrepo de la aplicación extensiva de esta norma a los ingresos provenientes de un empleo en la esfera privada, pues no hay fundamento jurídico alguno para ello. En ese ámbito, en Hernández v. Mun. de Aguadilla, supra, se interpretó erróneamente el estatuto en controversia y se pautó una norma contraria a la intención legislativa. Como explicó el Hon. Juez Asociado señor Fuster Berlingeri:

> [E]s evidente que el legislador no incluyó en la Sec. 7.17 en cuestión lenguaje alguno sobre descuentos salariales, porque tuvo la intención de que ninguno se hiciese. Su intención, más bien, fue que al empleado público despedido ilícitamente se le pagase los salarios completos que había dejado de percibir durante el tiempo en que estuvo cesanteado. (Énfasis en el original). Hernández v. Mun. de Aguadilla, supra, pág. 215 (Fuster Berlingeri, J., Opinión disidente).

Más aún, la conclusión del Tribunal se basó en jurisprudencia y estatutos laborales aplicables a la empresa privada. Al extrapolar esta norma del andamiaje privado, se vulneraron los derechos y las protecciones propias de los empleados del sector público.

De hecho, con posterioridad a Hernández v. Mun. de Aguadilla, supra, la agencia con conocimiento especializado en la materia, la entonces Junta de Apelaciones del Sistema de Administración de Personal (JASAP), tuvo la oportunidad de reaccionar a ese precedente. Específicamente, confirmando que la Sección 7.17 solamente encontraba límite en la disposición constitucional que prohíbe doble compensación. Por tanto, en el ámbito de ingresos privados, el entonces

presidente de la JASAP, Hon. Miguel A. Romero Lugo, expresó que:

> Nótese que la redacción de la citada Sección 7.17 (2), **por sí sola**, nada estableció sobre descuento (o deducción) al determinarse la cuantía a otorgarse por concepto de sueldos dejados de percibir.
>
> . . . .
>
> [A]doptar el razonamiento expuesto por el Honorable Juez Fuster Berlingeri, tiene[] el efecto de establecer **sin lugar a dudas**, que "el remedio establecido en la Sección 7.17 (2) tiene un propósito que va más allá de indemnizar a la víctima. Sirve, además, como un freno para evitar los despidos ilegales y la perturbación que ello puede ocasionar a una sana administración pública".
>
> . . . .
>
> En el análisis final, lo cierto es que no es justo pretender que el empleado ilegalmente cesado se cruce de brazos a esperar el resultado final de la litigación interpuesta, pues necesita de algún ingreso para poder subsistir. (Énfasis en el original) (Citas omitidas). Miguel A. Romero Lugo, Comentarios al P de la C. 2311 y P. del S. 848, Comisión del Trabajo, Cámara de Representantes, 3ra Ses. Ord., 14ta Asam. Leg., 9 de mayo de 2002, págs. 2-3.

El razonamiento antes expuesto revela claramente que antes, durante y posterior a Hernández v. Mun. de Aguadilla, supra, no existe un mandato legislativo para realizar el descuento que se instauró en ese precedente y la limitación constitucional es clara en torno a su aplicación limitada a los ingresos públicos. No existe razón para perpetuar ese precedente.

Tal como adelanté en Acevedo Sepúlveda v. Depto. Salud, 191 DPR 28, 74 (2014) (Estrella Martínez, J., Opinión de conformidad en parte y disidente en parte), este precedente atropella a los servidores públicos que vindican sus derechos. Así, penaliza a las personas diligentes que, tras

ser despedidas ilegalmente, buscan sostenerse mediante otro empleo en el ámbito privado. Lo anterior "resulta en una injusticia contra el empleado público que ya sufrió el vejamen del despido ilegal". Hernández v. Mun. de Aguadilla, supra, pág. 217 (Fuster Berlingeri, J., Opinión disidente).

Asimismo, se beneficia a los patronos gubernamentales que despiden ilegalmente a sus empleados o empleadas. Bajo esta doctrina, "un patrono público recalcitrante que sigue una estrategia de demora sabe que si pierde en los tribunales puede contar con la disminución de la paga atrasada por lo ganado del cesanteado de otras fuentes de compensación". D. M. Helfeld, Derecho Laboral, 71 Rev. Jur. UPR 447, 465 (2002). Al debilitar este importante incentivo que tenía como propósito garantizar que el patrono gubernamental respetara la ley, se premia al patrono que actuó ilícitamente.

Por tanto, a la luz de los fundamentos expuestos, no puedo avalar la postura de una mayoría de este Tribunal. Como agravante, la fórmula propuesta no abarca la multiplicidad de casos en que los servidores públicos tienen que mitigar con creatividad y sacrificio la pérdida de su empleo de forma ilegal. A su vez, no provee un remedio que se ajuste al mandato legislativo. En consecuencia, respetuosamente disiento.


Luis F. Estrella Martínez
Juez Asociado